**John M. DOMINGUEZ, Plaintiff,**

v.

**Dan FIGEL, Sheriff of Allen County; and Donald Crick, Deputy Chief, Defendants.**

**Civ. No. F 85–250.**

United States District Court,
N.D. Indiana,
Fort Wayne Division.

Jan. 23, 1986.

Joseph W. Ruppert, Bowman, Crowell & Teeters, Fort Wayne, Ind., for plaintiff.

William F. McNagny, Barrett, Barrett & McNagny, Fort Wayne, Ind., for defendants.

## MEMORANDUM OPINION AND JUDGMENT

WILLIAM C. LEE, District Judge.

This matter is before the court for a decision on the merits following a bench trial. This case was brought pursuant to 42 U.S.C. § 1983 for alleged violations of the plaintiff's first and eighth amendment rights arising out of plaintiff being restricted to his cell at the Allen County Jail for five days. Having examined and considered the entire record, having determined the credibility of the witnesses after viewing their demeanor and considering their interests, and being duly advised, the court hereby enters the following Findings of Fact and Conclusions of Law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.

### Findings of Fact

The plaintiff, John M. Dominguez ("Dominguez"), is a resident of Fort Wayne, Indiana. During May, 1985, he was confined as a inmate in the Allen County Jail, which is under the control of defendant Daniel Figel, the Sheriff of Allen County, Indiana. Co-defendant Donald Crick is a Deputy Chief in the Allen County Sheriff's Department ("Sheriff's Department") and is the Commander of the jail.

In early May, 1985, the Sheriff's Department became aware of a serious drug problem in the Allen County Jail. Several inmates filed a written complaint that Dominguez had reneged on an agreement to supply them with marijuana in exchange for cigarettes. The Sheriff's Department then cultivated an informant among the inmates, who obtained drugs from Dominguez. These drugs were turned over to Inspector Joseph Squadrito, who had them tested. Squadrito, of the Sheriff Department's Internal Affairs Division, had been investigating the jail's drug problem, attempting to ascertain whether any jail staff member had been involved. Squadrito's investigation had already uncovered that Dominguez' fiance and the wife of Jerry Landis ("Landis"), Dominguez' cellmate, were involved in drug dealing outside the jail.

When the informant turned over the drugs to Squadrito, a decision was made with Crick's approval to conduct a search, or "shakedown," of Dominguez' cell on Friday, May 17, 1985. The search uncovered a small quantity of marijuana. Dominguez and Landis were ordered placed on "lockdown" status, with the added restriction that they not be allowed to leave their cell at any time. The decision to restrict Dominguez and Landis to their cell was made both to protect the Sheriff Department's informant, as well as to isolate Dominguez and Landis in order to discover how drugs got into the jail.

The lockdown was ordered late Friday afternoon, May 17, 1985. Jail regulations require that a locked down prisoner be given a disciplinary hearing within seventy-two hours. However, Crick testified that Saturdays and Sundays are excluded in calculating such time. Because of the lateness of the time on Friday, this time did not effectively begin to run until Monday.

A disciplinary hearing for Dominguez was held on Thursday, May 23, 1985, at 2:00 p.m.

Jail regulations also require that a prisoner on lockdown be given one hour of exercise out of his cell each day. Although Dominguez was confined to his cell generally, he exercised in his cell. He testified that he always exercised in his cell, and thus the restriction to his cell did not disrupt or impair his ability to exercise during · the five days he was on lockdown.

The jail had a Sunday religious service which inmates could attend. In addition, the Jail Chaplain, Rev. Warren Doyle Staton, was available for individual consultations with inmates. On Sunday, May 19, 1985, Dominguez requested that he be allowed to attend the religious services. He was let out of his cell and allowed to visit with Rev. Staton for approximately an hour. During that conversation, Dominguez revealed that he wanted to sue the jail and its officials.

On May 23, 1985, a disciplinary hearing was held, at which Dominguez signed a form accepting the findings of the disciplinary committee and accepting as punishment the five days of lockdown and a loss of commissary privileges.

### Conclusions of Law

This action is brought pursuant to 42 U.S.C. § 1983. The court has jurisdiction over this cause pursuant to 28 U.S.C. § 1343, and jurisdiction has been conceded by counsel.

Dominguez argues that the lockdown and restriction against leaving his cell violated his first and eighth amendment rights. The court considers each of these claims in turn.

### A. First Amendment—Freedom of Religion

■ Dominguez argues that his freedom of religion was violated by the refusal to let him leave his cell to attend religious services on Sunday, May 20, 1985. As an initial matter, the court finds that there is no factual predicate to this claim. The facts of this case indicate that Dominguez in fact left his cell and visited with Rev. Staton for nearly an hour. During such a visit, Dominguez had the opportunity to exercise his religion with the assistance of Rev. Staton. Thus, the court finds that Dominguez was not denied his right to religious freedom during his five days in "lockdown" status. The defendants are entitled to judgment on this ground alone.

■ Even if Dominguez' factual assertions were correct, the court finds that Dominguez would not make out a first amendment claim. It is true that "convicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison." *Bell v. Wolfish,* 441 U.S. 520, 545, 99 S.Ct. 1861, 1877, 60 L.Ed.2d 447 (1979). Courts which have examined the regulation of the right to worship in prison settings have generally recognized that the regulations must be "reasonably and substantially justified by considerations of prison discipline and order." *Gallahan v. Hollyfield,* 670 F.2d 1345, 1346 (4th Cir.1982), quoting *Sweet v. South Carolina Dept. of Corrections,* 529 F.2d 854, 863 (4th Cir.1975); *Teterud v. Burns,* 522 F.2d 357 (8th Cir.1975). *See Dreibelbis v. Marks,* 742 F.2d 792, 794 (3d Cir.1984) (right to practice religion may be reasonably restricted in order to facilitate the maintenance of proper discipline in prison). The Seventh Circuit has formulated a two part test for measuring the constitutional propriety of restrictions on the exercise of religion:

> [P]rison rules that incidentally restrain the free exercise of religion are justified only "if the state regulation has an important objective and the restraint on religious liberty is reasonably adapted to achieving that objective."

*Madyun v. Franzen,* 704 F.2d 954, 959–60 (7th Cir.), *cert. denied,* 464 U.S. 996, 104 S.Ct. 493, 78 L.Ed.2d 687 (1983), quoting *La Reau v. MacDougall,* 473 F.2d 974, 979 (2d Cir.1976).

Here, the Sheriff Department's objective was two-fold: to protect the informant working in the jail population, as well as to isolate Dominguez as part of the continuing investigation into how drugs got into the jail. Restricting Dominguez to his cell was reasonably and substantially justified by these two interests, which relate directly to prison order and discipline. Under the Seventh Circuit standard, the Department's objectives are "important" precisely because they sought to maintain prison order and discipline through preventing Dominguez from harming the informant and by stopping the flow of drugs into the jail. Further, the confinement was "reasonably adapted" to achieving those objectives. Precisely because the maintenance of discipline and order are within the province of prison or jail officials, wide-ranging deference should be given to their discretionary judgments. *Bell*, 441 U.S. at 547, 99 S.Ct. at 1877; *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 132, 97 S.Ct. 2532, 2541, 53 L.Ed.2d 629 (1977). The Sheriff's Department believed that Dominguez posed a threat to prison order and discipline, and their decision to confine him was reasonable. Thus, the confinement of Dominguez in his cell for one Sunday is constitutionally justified even if it prevented Dominguez from exercising his religion for one day. In short, Dominguez cannot make out a first amendment claim even if his factual assertions were correct.

The court therefore finds that judgment for the defendants on Dominguez' first amendment claim is justified by both the law and the facts.

### B. Eighth Amendment—Failure to Allow Exercise

■ Dominguez' second claim is that the failure to let him out of his cell to exercise constituted cruel and unusual punishment. Once again, the facts of this case indicate that Dominguez has no claim. Dominguez testified that he exercised in his cell during the time on "lockdown." On cross-examination, he also admitted that he never exercised in any area outside of his cell when he was not on lockdown—in effect admitting that the only place he ever exercised was in his cell. Thus, the fact that he was confined to his cell during the lockdown could not have had any effect on his exercise routine, and thus could not have constituted some kind of infringement on his right to exercise. Once again, the facts make it clear that the defendants are entitled to judgment.

■ The legal basis for the claim is likewise unpersuasive. As the Seventh Circuit has noted: "Various prison conditions do not exist in isolation. Rather, challenged conditions must be viewed in light of other prison conditions that may aggravate or mitigate the effect of the challenged conditions." *Wellman v. Faulkner*, 715 F.2d 269, 274 (7th Cir.1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 3587, 82 L.Ed.2d 885 (1984). In analyzing claims based on restrictions on exercise, a court must "look at the totality of the circumstances, including the extent to which the restrictions affect the mental or physical health of the inmate." *Clay v. Miller*, 626 F.2d 345, 347 (4th Cir.1980). Here, as in *Clay*, there was no showing that Dominguez' mental or physical health deteriorated or was threatened as a result of not having more area to exercise in. Dominguez was able to and in fact did engage in exercises in his cell. This overwhelmingly mitigates the fact that he was confined to his cell. He testified that he would not have exercised in the dayroom area, which he would have had access to if he had been released for exercise. In addition, the amount of time that Dominguez was unable to leave his cell was relatively short—five days. The totality of the circumstances here indicate that at best nominal restrictions on Dominguez' ability to exercise did not rise to the level of a constitutional violation.

The court therefore finds that the defendants are entitled to judgment on the basis of both the law and the facts.

### C. Award of Attorneys Fees and Sanctions

Although not directly raised by the defendants, an issue arises from the facts of this case concerning the propriety of

awarding attorneys fees and sanctions against Dominguez for filing this suit. Rule 11 of the Federal Rules of Civil Procedure requires that each pleading or motion be signed by an attorney or the party if the party is proceeding *pro se.* The rule then provides:

> The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information and belief formed after a reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

If a pleading violates this rule the court "shall impose" an "appropriate sanction," which may include the amount of reasonable expenses and attorneys fees incurred by the other party because of the filing of the pleading or motion.

The Notes of the Advisory Committee on the Federal Rules make it clear that Rule 11's provisions are designed to "discourage dilatory or abusive tactics and [to] help streamline the litigation process by lessening frivolous claims or defenses." The Rule applies to anyone who signs a pleading, motion, or other paper, and the same standards apply to *pro se* litigants, although the concerns of *Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), may be taken into account.

The core of Rule 11 is that the signature on the pleading certifies that "after reasonable inquiry [the pleading, motion, or other paper] *is well grounded in fact* and warranted by existing law...." Thus, Rule 11 sanctions cannot be avoided by a merely subjective belief that the law or facts are a certain way; the "reasonable inquiry" language makes the test an objective one. *Indianapolis Colts v. Mayor and City of Baltimore,* 775 F.2d 177, 181 (7th Cir.1985); *Glick v. Koenig,* 766 F.2d 265, 270 (7th Cir.1985).

■ The court begins by noting that Dominguez' attorney, Joseph Ruppert, is not responsible for actions which might give rise to Rule 11 sanctions. Mr. Ruppert was appointed by this court to represent Dominguez after Dominguez had filed this action *pro se.* He was presented with a client who made certain factual assertions that were not obviously incorrect. Mr. Ruppert recognized the potential legal inadequacy of the two claims, but represented his client with commendable diligence.

■ However, Dominguez filed this action with complete knowledge of the facts as they occurred. He knew that Rev. Staton was available and had visited him. He knew that he was able to exercise in his cell, and that his cell was the only place he would exercise, whether confined to it or not. Despite this knowledge of the facts, Dominguez filed this action. He knew or should have known that his action was not well grounded in fact, yet he chose to prosecute it. Perhaps most revealing of this bad faith is a claim which was removed from this cause by Mr. Ruppert. When Dominguez first filed this suit, he claimed that he had been denied a shower during the five days he was on lockdown status. Later, Dominguez admitted that he had received a shower during that time, and this fact was confirmed by the testimony of Inspector Squadrito. Dominguez had filed a claim about not receiving a shower knowing that he had received one. The testimony of Rev. Staton provides the rationale why Dominguez would do this—as early as Sunday, May 19, 1985, Dominguez was contemplating suing the jail and its officials. It is clear that he wanted to sue regardless of the facts.

Such bad faith places an unfair and unreasonable burden on defendants and the court alike. These defendants were required to defend an action that had no basis in fact. The costs incurred and fees paid should never have been expended. Likewise, this court was required to hold conferences and a half day of trial to reach a conclusion which should have been clear

from the beginning: Dominguez' claims have no basis in fact. The waste of judicial resources caused by this case is inexcusable. The court therefore finds that Dominguez should pay the reasonable attorneys fees and costs incurred by the defendants in defending this suit as a Rule 11 sanction for filing this suit. The defendants shall have ten days from the date of this order to submit their detailed request for fees and costs.

■ In addition, the court finds that Dominguez must be held accountable for the waste of judicial resources his suit has caused. A conservative estimate of the time spent by the court on this case is 5.75 hours, which includes the conferences held in this cause, the trial itself, and the writing of this memorandum of decision. According to Levin and Colliers, "Containing the Cost of Litigation," 37 RUTGERS L.REV. 219, 227 (1985), a single hour spent by a federal judge on a case costs the government Six Hundred Dollars ($600.00). Thus, Dominguez has cost the taxpayers at least $3,450.00 for persisting in a factually baseless suit. An appropriate sanction would be to require Dominguez to reimburse the taxpayers for this expense. The court hereby gives notice to future litigants that the measure of Rule 11 fines will be based on this formula. For purposes of this case, however, this amount will be discounted to $1,500.00, to reflect the fact that Dominguez was unaware of this method of computing Rule 11 fines. The court therefore finds that Dominguez should pay a fine of $1,500.00 as a further Rule 11 sanction for filing this factually baseless suit.

This court stands ready and willing to hear all meritorious cases, whether they are filed by jail inmates or citizens. But the crowded dockets of the federal courts cannot tolerate the burden posed by factually baseless suits that drain judicial resources. This court will sanction those cases, like this one, that are so meritless they can only waste the court's resources.

This Memorandum of Decision contains the court's Findings of Fact and Conclusions of Law pursuant to Rule 52 of the Federal Rules of Civil Procedure. *See Rucker v. Higher Educational Aids Board,* 669 F.2d 1179, 1183–84 (7th Cir. 1982).

### Conclusion

The plaintiff has failed to establish by a preponderance of the evidence any violation of his right to freedom of religion or his right to be free from cruel and unusual punishment. Therefore, the court hereby enters judgment for the defendants.

In addition, the plaintiff is hereby ORDERED to pay the reasonable attorneys fees and costs incurred by the defendants in defending this cause as a Rule 11 sanction for filing this lawsuit. The amount of these fees and costs will be determined by the court. The defendants are hereby GRANTED ten (10) days from the date of this order to file their detailed request for fees and costs. The plaintiff is also hereby ORDERED to pay One Thousand Five Hundred Dollars ($1,500.00) to the Clerk of this court as a further Rule 11 sanction.