Gary A. ROBINSON, Plaintiff,

v.

Mayor Win MOSES; David Rieman, Chief of Police; Frederick C. Firks, Police Officer; and Sheriff of Allen County, Defendants.

Civ. No. F 86–24.

United States District Court,
N.D. Indiana,
Fort Wayne Division.

Oct. 1, 1986.

Gary A. Robinson, pro se.

Phillip A. Renz, Fort Wayne, Ind., for Moses, Rieman, Firks and City of Fort Wayne.

William F. McNagny and Thomas A. Herr, Fort Wayne, Ind., for Sheriff of Allen County.

## ORDER

WILLIAM C. LEE, District Judge.

This matter is before the court on two motions for summary judgment. Defendant, the Sheriff of Allen County, filed a motion for summary judgment on May 15, 1986, accompanied by a memorandum and a number of affidavits. Defendants Win Moses (Mayor), David Rieman (Chief of Police), and Frederick Firks (Police Officer), filed their motion for summary judgment on June 9, 1986, accompanied by a memorandum, affidavits and exhibits. On May 28, 1986 and July 11, 1986, this court issued notices to the plaintiff, alerting him to the respective motions, his rights, responsibilities, and the consequences of failing to respond. Plaintiff was invited to file affidavits or other responsive materials to aid the court and was given twenty (20) days from receipt of the orders to respond. Well over thirty (30) days have passed since the court notified plaintiff of the most recent motion; plaintiff has not responded to either motion for summary judgment. For the following reasons, defendants' motions are granted.

### Factual Background

Plaintiff filed this action under the eighth and fourteenth amendments, seeking Fifty Thousand Dollars ($50,000.00) from each defendant under 42 U.S.C. § 1983 (1982). At approximately 11:30 P.M. on September 23, 1984, plaintiff was stopped by Fort Wayne Police Officer Frederick Firks (Firks) for driving with an expired temporary license plate. Firks made a routine radio warrants check, discovered that plaintiff was wanted on a warrant for a parole violation, and attempted to arrest plaintiff. At this point a scuffle ensued. Plaintiff's version of the facts in the complaint vary greatly from the facts as they appear in the first exhibit attached to the memorandum submitted by defendants Moses, Rieman, and Firks. That exhibit consists of ninety-two pages of police reports.

Officer Firks' statement and interview indicate that during the scuffle Robinson was able to reach down, unzip Firks' holster and remove Firks' handgun. At about the same time Robinson's friend, Tom Campbell, was walking toward Firks and was yelling "kill the fucker." According to Firks' statement Robinson turned, aimed the weapon at Firks, but for unknown reasons, walked away. During the scuffle Robinson hit Firks, cutting his lip.

According to Robinson's complaint, Firks initiated the scuffle and swung at Robinson, hitting his mouth, making it bleed, and knocking a tooth out of line. Robinson also alleged that Firks went for his gun. "I told him that there was no need for the gun but he continued at [sic] pulling it out. I was really scared then, so I took my left hand to try to stop him from getting the gun out. In the process the policemans [sic] hand slipped off of the gun by my hand [sic] being on top of the policemans [sic] my hand fell onto the gun. I pulled it out of the holster [and] he then let his hold off of me and backed up a little with me holding the gun by the butt only."

On March 5, 1985, Robinson pled guilty to robbery (of Firks' gun), battery to a police officer, and resisting law enforcement; he was sentenced to four years in prison.

After the scuffle Robinson ran to Cynthia Milton's house. He hid Firks' gun on the way to the house. When the police came to the door Milton was prevented from answering the door by Robinson, who put his hand over her mouth. Eventually Milton was able to leave the house. She found Officer Reggie Coleman, gave him her keys, and told him that Robinson was in her apartment. Robinson was found hiding in a closet; Campbell was found in a back bedroom. Robinson then took some of the police officers to the place where he had thrown Firks' handgun.

Robinson's complaint alleges that after he was found at Milton's house he was taken outside without any clothes on, except his undershorts. He states that he was embarassed as people watched him walk down the street in his shorts. His complaint further alleges that "[t]he policemen let me put on my pants, shirt but no shoes ..." before being transported to the City-County lockup. Robinson states that he was in the City-County lockup for three days, was denied phone calls, and was taken to an arraignment without shoes.

Lastly, Robinson describes the medical care he received after being transported to the Allen County Jail. Robinson complained a number of times about a sore throat. He was seen by a nurse and an ear, nose and throat specialist on numerous occasions while at the Allen County Jail.

### Decision

Plaintiff is proceeding *pro se*. *Pro se* pleadings are liberally construed. *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). District courts are to ensure that the claims of a *pro se* litigant are given fair and meaningful consideration. *Matzker v. Herr*, 748 F.2d 1142, 1146 (7th Cir.1984). This court also recognizes that federal courts have historically exercised great tolerance to ensure that an impartial forum remains available to plaintiffs invoking its jurisdiction *pro se*. *Nixon v. Individual Head of St. Joseph Mortg. Co.*, 612 F.Supp. 253 (N.D.Ind.1985). *Pro se* complaints such as plaintiff's are held to less stringent pleading requirements; rigor in the examination of such complaints is inappropriate.

When approaching a motion for summary judgment made against a *pro se* litigant, the court must be particularly cautious. Nevertheless, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, — U.S. —, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). Thus, summary judgment serves as a vehicle with which the court "can determine whether further exploration of the facts is necessary." *Hahn v. Sargent*, 523 F.2d 461, 464 (1st Cir.1975).

■ In making this determination, the court must keep in mind that the entry of

summary judgment terminates the litigation, or an aspect thereof, and must draw all inferences from the established or asserted facts in favor of the non-moving party. *Peoples Outfitting Co. v. General Electric Credit Corp.*, 549 F.2d 42 (7th Cir.1977). A party may not rest on the mere allegations of his pleadings or the bare contentions that an issue of fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). *See generally* C. Wright, *Law of Federal Courts*, § 99 (4th ed. 1983); 6 *Moore's Federal Practice*, § 56.15 (2d ed. 1983). In granting summary judgment the court may consider any material that would be admissible or usable at trial. *Aguilera v. Cook Cty. Police and Corr. Merit Bd.*, 760 F.2d 844, 848 (7th Cir.1985) (quoting 10A Wright, Miller & Kane, *Federal Practice and Procedure* § 2721, at p. 40 (2d ed. 1983).

## I.

### *Plaintiff's Claims against Moses, Rieman and Firks*

■ Plaintiff apparently contends that Officer Firks used "excessive force" in his arrest, violating his fourteenth amendment right to be free of state intrusions into his personal privacy and bodily security through means so brutal, demeaning, and harmful as to literally shock the conscience of the court. *Gumz v. Morrissette*, 772 F.2d 1395, 1400 (7th Cir.1985). According to *Gumz*, the use of force by a state officer is unconstitutional if it: "(i) caused severe injuries, (ii) was grossly disproportionate to the need for action under the circumstances, and (iii) was inspired by malice rather than merely careless or unwise excess of zeal so that it amounted to an abuse of official power that shocks the conscience." *Id.* at 1400. Plaintiff's allegations com-

pletely fail to meet any of the requirements of *Gumz*. There is nothing to indicate that Officer Firks was inspired by malice. Firks' actions were not disproportionate to the need under the circumstances and no injuries were caused.

To the contrary, the police reports indicate that the scuffle ensued only after the plaintiff resisted arrest. Moreover, Nurse Vicki Overholt testified in her affidavit that plaintiff was not injured when he was received at the jail on September 24, 1984. Plaintiff never complained about injury to his mouth or his teeth; the medical records bear this out. While plaintiff alleges that he was taken outside not fully clothed, numerous police reports, detailing plaintiff's arrest, indicate that this never occurred at all.

While the plaintiff names Mayor Moses and Police Chief Rieman in his complaint there is no indication that either was personally involved in this case. Plaintiff's complaint alleges eighth and fourteenth amendment violations and asserts violations of 42 U.S.C. § 1983 (1982). Under § 1983, the potential individual liability of Moses and Rieman is predicated upon personal responsibility. *Schultz v. Baumgart*, 738 F.2d 231, 238 (7th Cir.1984); *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir.1983). Since there is no allegation (and no inference) that either Moses or Rieman participated in the alleged constitutional deprivations in any way, they cannot be held liable. Respondeat superior has been rejected under § 1983 as a basis for individual liability.[1]

## II.

### *Plaintiff's Claims against the Sheriff of Allen County*

Plaintiff's complaint alleges (as it relates to the Sheriff): (i) that plaintiff was in the

---

**1.** Plaintiff's complaint ambiguously names "All the above of Fort Wayne." To the extent that plaintiff alleges a cause of action against Fort Wayne, Fort Wayne cannot be held liable on these facts under § 1983. *See Pembaur v. City of Cincinnati*, ── U.S. ──, 106 S.Ct. 1292, 1297–99, 89 L.Ed.2d 452 (1986) (municipal liability under § 1983 premised upon acts officially sanctioned or ordered by municipality) (cit-

ing *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978) and *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985) ). There is no indication that any of the acts plaintiff complains of resulted from an "official policy" within the meaning of *Monell*.

City-County lockup for three days and was denied phone calls; (ii) that plaintiff was taken to his arraignment without any shoes; and (iii) that plaintiff received medical care. While the allegations do not point to inadequate medical care the court will construe this portion of the complaint as one for inadequate medical care.

## A

### Place of Incarceration—Denial of Phone Calls

■ The complaint states, "I then sat in the City County lockup for three days [and] I was denied phone calls." Plaintiff's complaint cannot sustain a claim under the eighth amendment as a matter of law. The eighth amendment has no application to one who has not been found guilty of a crime; eighth amendment scrutiny is only appropriate after compliance with the constitutional guarantees associated with criminal prosecutions. *Bell v. Wolfish,* 441 U.S. 520, 535 n. 16, 99 S.Ct. 1861, 1872 n. 16, 60 L.Ed.2d 447 (1979); *Ingraham v. Wright,* 430 U.S. 651, 671–72 n. 40, 97 S.Ct. 1401, 1412–13 n. 40, 51 L.Ed.2d 711 (1977). While plaintiff's claim is properly scrutinized under fourteenth amendment due process analysis, on the facts of this case, the claim is frivolous.

■ As a pretrial detainee plaintiff must ultimately demonstrate that the conditions complained of (being held in the City-County lockup rather than the county jail) amount to punishment. *Bell,* 441 U.S. at 535, 538–39, 99 S.Ct. at 1871, 1873–74; *Kincaid v. Rusk,* 670 F.2d 737, 743 (7th Cir.1982). There are no facts in plaintiff's complaint or elsewhere that could possibly lead to even the remotest inference of punishment. To the contrary, Donald Crick, the Jail Commander responsible for the daily operations of the City-County lockup,

testified in his affidavit that prisoners are held on a temporary basis (no longer than twenty-four hours) while necessary paperwork, fingerprinting, and other preliminary work is being done. These are legitimate governmental purposes; there is no indication of punitive intent.

Assuming the existence of punitive intent plaintiff's § 1983 claim would still fail because there is no allegation or inference that the alleged deprivations caused compensable injury. *Kincaid,* 670 F.2d at 745–46 (compensable injury must be shown in § 1983 actions). Crick's affidavit indicates that each prisoner has an individual cell, bunk, toilet, and running water. The lockup is air conditioned, there is available reading material, and prisoners are fed three times each day. Indeed, the only difference between the City-County lockup and the county jail is the absence of a television and common area.

■ Plaintiff's allegation that he was denied the use of a telephone for three days is contradicted by Crick's affidavit, which the court must take as true for the purposes of this motion.[2] It is true that pretrial detainees, like inmates, are entitled to reasonable use of telephones at reasonable times. *Duran v. Elrod,* 542 F.2d 998 (7th Cir.1976); *see Hutchings v. Corum,* 501 F.Supp. 1276, 1296 (W.D.Mo.1980), and cases cited therein. Crick's affidavit, however, indicates that prisoners are permitted to use the telephones while in the City-County lockup and have direct access to phones while in holding cells. Plaintiff's bare allegation is insufficient to create a genuine issue of material fact, in view of Crick's affidavit. The Sheriff of Allen County is therefore entitled to summary judgment on plaintiff's claim that he was denied phone calls.

2. The court notes that the medical records, as well as the affidavit of Nurse Vicki Overholt indicate that plaintiff arrived at the Allen County Jail on September 24, 1984. Paragraph 3 of plaintiff's complaint alleges that plaintiff arrived at the jail on September 23, 1984; plaintiff was not taken into custody until September 24, 1984, in early morning hours. Thus, the affidavit of both Crick and Overholt, the medical records, and plaintiff's own inaccurate allegation in paragraph 3, contradict plaintiff's claim that he sat in the City-County lockup for three days.

## B

### Barefooted Arraignment

Plaintiff states in his complaint: "When I went for my arraignment, I didn't have on any shoes which also was embarrassing [sic]." Again, plaintiff's allegation is contested by Crick's affidavit, which states that prisoners may not appear in court without footwear. When a prisoner has no shoes, according to Crick, the Allen County Jail issues shoes, which are in turn delivered to the City-County lockup. Apart from its factual deficiencies the claim that plaintiff was embarassed hardly amounts to punishment.

## C

### Inadequate Medical Care

The plaintiff's complaint simply recites the course of events after his arrival at the Allen County Jail on September 24, 1984. The affidavit of Nurse Vicki Overholt, as well as the medical records, indicate that Robinson was given a medical screening on September 24, 1984; no neck or throat injury was reported. No report or complaint was made by Robinson regarding his alleged neck injury at that time. Robinson was seen during sick call on October 3, 1984, November 7, 1984, November 30, 1984, January 9, 1985, and January 16, 1985. On each occasion Robinson was examined by a medical doctor. On November 9, 1984, Robinson's x-rays were taken at St. Joseph Hospital and a thyroid profile was performed. On January 17, 1985, an ear, nose and throat specialist examined Robinson and diagnosed Robinson as having "tender neck of thyroid, infected vocal cords with slight dullness and thickening." On January 31, 1985, Robinson was again examined by the same specialist who then concluded that the condition was "rhinitis."

■ To the extent that this recitation of events can be treated as a claim at all, it does not give rise to any constitutional violations. *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), is the leading case on § 1983 claims alleging deliberate indifference to a prisoner's serious illness or injury. These claims ordinarily rely on the eighth amendment, which as noted earlier, has no application to pretrial detainees. *See Bell v. Wolfish*, 441 U.S. 520, 535 n. 16, 99 S.Ct. 1861, 1872 n. 16, 60 L.Ed.2d 447 (1979). However, pretrial detainees, as noted in *Bell*, retain constitutional rights at least as great as those eighth amendment rights enjoyed by prisoners. *Id.* The rights of pretrial detainees are derived from the Due Process Clause of the fourteenth amendment. *City of Revere v. Massachusetts General Hospital*, 463 U.S. 239, 244, 103 S.Ct. 2979, 2983, 77 L.Ed.2d 605 (1983).

■ In *Estelle*, the Court held that claims based on inadequate medical care require deliberate indifference on the part of prison officials and the existence of a serious medical need. *Estelle*, 429 U.S. at 104–05, 97 S.Ct. at 291. A claim of deliberate indifference is generally defeated by the fact of treatment. *Wells v. Franzen*, 777 F.2d 1258, 1264 (7th Cir.1985). Keeping plaintiff's *pro se* status clearly in mind, the allegations of plaintiff's complaint demonstrate that he was treated on numerous occasions, had an ear, nose and throat specialist appointed, and received medicine. Not only is there not even a hint of either deliberate indifference or the existence of a serious medical need, the record demonstrates that plaintiff was seen whenever he requested medical attention. Having determined that plaintiff's claim fails as a matter of law by the standards of eighth amendment scrutiny, as set forth in *Estelle*, the court must consider whether plaintiff, as a pretrial detainee, is entitled to greater protection under the fourteenth amendment.

The most recent Supreme Court case on the right of pretrial detainees to receive medical treatment is *City of Revere v. Massachusetts General Hospital*, 463 U.S. 239, 103 S.Ct. 2979, 77 L.Ed.2d 605 (1983). *Revere* involved a suspect (pretrial detainee) who was injured by the police. *Id.* at 239, 103 S.Ct. at 2981. The Court held that the plaintiff detainee's right to medical care was satisfied when he was taken to a hospi-

tal where he was given treatment. *Id.* at 245, 103 S.Ct. at 2983. The Court specifically declined the opportunity to define the parameters of due process obligations to pretrial detainees. *Id.* The Court went on to hold, "whatever the standard may be," it was fulfilled by seeing that plaintiff was taken promptly to a hospital that provided the necessary treatment. *Id.* at 245, 103 S.Ct. at 2983. While the Court cited *Youngberg v. Romeo,* 457 U.S. 307, 312 n. 11, 102 S.Ct. 2452, 2456 n. 11, 73 L.Ed.2d 28 (1982); *Norris v. Frame,* 585 F.2d 1183, 1187 (3d Cir.1978); *Loe v. Armistead,* 582 F.2d 1291 (4th Cir.1978), *cert. denied sub nom. Moffitt v. Loe,* 446 U.S. 928, 100 S.Ct. 1865, 64 L.Ed.2d 281 (1980), none of these cases define the parameters of due process obligations owed to pretrial detainees with claims similar to Robinson's. Thus, the Supreme Court has not defined the obligations mandated to pretrial detainees requiring medical attention.

Noting this, the Eleventh Circuit in *Hamm v. DeKalb Co.,* 774 F.2d 1567, 1573 (11th Cir.1985), *cert. denied,* — U.S. —, 106 S.Ct. 1492, 89 L.Ed.2d 894 (1986), held that the standard under the Due Process Clause of the fourteenth amendment for pretrial detainees is the same standard that applies to prisoners bringing claims under the eighth amendment. *See also H.C. by Hewett v. Jarrard,* 786 F.2d 1080 (11th Cir.1986). It was noted that "courts should not, in the name of the Constitution, become enmeshed in the minutiae of prison operations." *Hamm,* 774 F.2d at 1573. The court, citing *Bell v. Wolfish,* 441 U.S. at 562, 99 S.Ct. at 1886, noted that a state's interest in reasonably limiting the cost of a detention facility is a legitimate governmental objective. *Id.* at 1573. The court reasoned that distinguishing the eighth amendment and the fourteenth amendment's due process standards in the area of pretrial detainees would require courts to evaluate the details of slight differences in prison conditions. *Id.* at 1574. The court concluded that the level at which states provide pretrial detainees with medical treatment must meet the standards applied under the eighth amendment prohibition on cruel and unusual punishment; the state must not be indifferent to serious medical needs.

Under these standards, as noted earlier, Robinson's claim obviously fails. Robinson's medical screening on September 24, 1984, the affidavit of Nurse Vicki Overholt, and the medical records, indicate that Robinson had no neck or throat injury when he arrived at the Allen County Jail on September 24, 1984. Moreover, Robinson was seen during sick call on five occasions, whenever he requested attention. On each occasion Robinson was examined by a medical doctor. In view of all these facts, Robinson's claim for inadequate medical treatment fails as a matter of law and defendant, the Sheriff of Allen County, is entitled to summary judgment on that claim.

### III.

*Award of Attorney Fees and Sanctions*

Although not directly raised by the defendants, an issue arises from the facts of this case concerning the propriety of awarding attorneys fees and sanctions against Robinson for filing this suit. Rule 11 of the Federal Rules of Civil Procedure requires that each pleading or motion be signed by an attorney or the party if the party is proceeding *pro se.* The rule then provides:

> The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information and belief formed after a reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

If a pleading violates this rule the court "shall impose" an "appropriate sanction," which may include the amount of reasonable expenses and attorneys fees incurred

by the other party because of the filing of the pleading or motion.

■ The Notes of the Advisory Committee on the Federal Rules make it clear that Rule 11's provisions are designed to "discourage dilatory or abusive tactics and [to] help streamline the litigation process by lessening frivolous claims or defenses." *See also Dominguez v. Figel,* 626 F.Supp. 368, 373 (N.D.Ind.1986). The Rule applies to anyone who signs a pleading, motion, or other paper, and the same standards apply to *pro se* litigants, although the concerns of *Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), may be taken into account. *Tarkowski v. County of Lake,* 775 F.2d 173, 176 (7th Cir.1985) (a *pro se* suit is frivolous when it has no basis, either in fact or in law).

■ The core of Rule 11 is that the signature on the pleading certifies that "after reasonable inquiry [the pleading, motion, or other paper] is *well grounded in fact* and warranted by existing law...." Thus, Rule 11 sanctions cannot be avoided by a merely subjective belief that the law or facts are a certain way; the "reasonable inquiry" language makes the test an objective one. *Indianapolis Colts v. Mayor and City of Baltimore,* 775 F.2d 177, 181 (7th Cir.1985); *Glick v. Koenig,* 766 F.2d 265, 270 (7th Cir.1985); *Dominguez,* 626 F.Supp. at 373.

■ Robinson filed this action with complete knowledge of the facts as they occurred. He knew that he, not Officer Firks, initiated the scuffle. He knew that he did not just "hold the gun by the butt only," but rather, that he pointed the gun at Officer Firks. Campbell (who urged Robinson to shoot Firks) stated in his police interview that Robinson "stood there with the gun pointed." Robinson knew that Firks had not hit him in the mouth and knocked a tooth out of line; the affidavit testimony of Nurse Overholt and the medical records bear this out. He knew that he was not taken outside without any clothes on when found at Milton's house; numerous police report interviews bear this out. He obviously knew that he was not in the City-County lockup for three days; his own complaint indicates that he was transferred to the Allen County Jail before even one day had expired. Robinson also knew that he was not taken to his arraignment without shoes; Crick's affidavit indicates that shoes are provided to all prisoners before being arraigned. In short, not only are some of Robinson's claims factually inconsistent with each other (i.e., three days spent in the City-County lockup and immediate transfer to the Allen County Jail), they are inconsistent with the affidavits, medical records, and police reports, which must be taken as true for purposes of this motion. *See Aguilera,* 760 F.2d at 848. Robinson filed this complaint seeking $50,-000 from each defendant knowing that his claim was not well grounded in fact.

Robinson's bad faith places an unfair and unreasonable burden on the defendants and the court. These defendants were required to compile dozens of police interviews as well as numerous affidavits and medical reports. The costs incurred and fees paid should never have been expended. Similarly, the court was required to carefully sort through a myriad of documents only to discover that plaintiff's allegations had no basis in fact or law. The waste of judicial resources caused by this case is inexcusable. The court therefore finds that Robinson should pay the reasonable attorneys fees and costs incurred by the defendants in defending this suit as a Rule 11 sanction for filing this suit. The defendants shall have ten days from the date of this order to submit their detailed request for fees and costs.

Moreover, Robinson must be held accountable for the waste of judicial resources this suit has caused. In *Dominguez,* this court noted that a single hour spent by a federal judge on a case costs the government Six Hundred Dollars ($600.00). *Dominguez,* 626 F.Supp. at 374 (*citing*

Levin and Colliers *Containing the Cost of Litigation*, 37 Rutgers L.Rev. 219, 227 (1985)). The court also gave notice to future litigants that fines would be imposed on the basis of this formula. A conservative estimate of the time spent on this case is six (6) hours, which includes research and writing of this order. Thus, Robinson has cost the taxpayers at least $3,600.00 for filing this factually baseless suit. The court therefore finds that Robinson should pay a fine of $3,600.00 as a further Rule 11 sanction for filing this frivolous claim, said fine to be payable within thirty (30) days of this order.

This court stands ready and willing to hear all meritorious cases, whether they are filed by jail inmates or citizens. But the crowded dockets of the federal courts cannot tolerate the burden posed by factually baseless suits that drain judicial resources. This court will sanction those cases, like this one, that are so meritless they can only waste the court's resources.

### Conclusion

Defendants, through affidavits and other material that is properly considered in a summary judgment proceeding, have established that there are no genuine issues of material fact and that they are entitled to judgment as a matter of law. Therefore, the court hereby enters summary judgment for the defendants and against the plaintiff.

In addition, the plaintiff is hereby ORDERED to pay the reasonable attorneys fees and costs incurred by the defendants in defending this cause as a Rule 11 sanction for filing this lawsuit. The amount of these fees and costs will be determined by the court. The defendants are hereby GRANTED ten (10) days from the date of this order to file their detailed request for fees and costs. The plaintiff is also hereby ORDERED to pay $3,600.00 to the Clerk of this court as a further Rule 11 sanction within thirty (30) days from the date of this order.