**In the Matter of Donald James GRAVES, Debtor.**

**Mark A. WARSCO, Trustee, Plaintiff,**

**v.**

**Donald James GRAVES; Rose Graves; and Graves Body Crusher, Defendants.**

Bankruptcy No. 84–10526.
Adv. Nos. 84–1084, 84–1088.
Civ. No. F86–320.

United States District Court,
N.D. Indiana,
Fort Wayne Division.

Feb. 27, 1987.

Mark A. Warsco, Fort Wayne, Ind., trustee/plaintiff.

Roland W. Gariepy, Fort Wayne, Ind., for debtors/defendants.

## ORDER

WILLIAM C. LEE, District Judge.

This is an appeal from two bankruptcy court orders, both dated July 21, 1986. Both parties have briefed their positions and oral argument was heard on December 3, 1986. On January 30, 1987, the court heard further arguments on the issue of sanctions. For the following reasons, both of the bankruptcy court's decisions are affirmed and sanctions are imposed on appellants and their counsel, Roland Gariepy, for filing this frivolous appeal.

## FACTS

This appeal is brought by the debtor, Donald Graves, and his non-bankrupt spouse, Rose Graves. Both orders which are being appealed, proceedings 84–1084 and 84–1088, were consolidated and the bankruptcy judge heard trial testimony on November 21 through 22, 1985. In proceeding No. 84–1084, the bankruptcy court entered an order avoiding the conveyance of Graves Body Crusher from Donald Graves to his wife, Rose Graves, pursuant to 11 U.S.C. § 544(b) and I.C. § 32–2–1–14, and vested the property constituting Graves Body Crusher in the bankruptcy estate, pursuant to Bankruptcy Rule 7070. In its July 21, 1986 opinion in proceeding No. 84–1088, the bankruptcy court denied Donald Graves' discharge.

There are two issues on appeal.[1] The first is whether the bankruptcy court erred

---

1. The parties actually briefed three issues (excluding the sanctions issue). In this brief, the debtor argued that a number of the bankruptcy court's factual findings were clearly erroneous. The debtor, however, failed to support this argument with an adequate record on appeal. The

in vesting purported entirety property in the bankruptcy estate. The second issue is whether the bankruptcy court erred in denying discharge under 11 U.S.C. § 727.

## I. Standard of Review

The bankruptcy court's factual findings will not be aside unless clearly erroneous. The rules of bankruptcy procedure provide the applicable standard of review. Rule 8013 reads:

> On an appeal the district court or bankruptcy appellate panel may affirm, modify, or reverse a bankruptcy court's judgment, order, or decree or remand with instructions for further proceedings. Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses.

This high standard of review has been followed by district courts. *See, e.g., In re Clarkson,* 767 F.2d 417, 419 (8th Cir.1985); *In re Tesmetges,* 47 B.R. 385, 388 (E.D.N.Y.1984). The clearly erroneous language of the rule tracks the language found in Federal Rule of Civil Procedure 52(a), and cases construing the standard under Rule 52(a) are equally applicable to bankruptcy cases. *Matter of Louisiana Industrial Coatings, Inc.,* 53 B.R. 464, 467 (E.D.La. 1985). The Supreme Court recently reaffirmed its long standing definition of this standard: "a finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City, N.C.,* 470 U.S. 564, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985) (quoting *United States v. United States Gypsum Co.,* 333 U.S.

364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)).

Unlike the "clearly erroneous" standard used to review factual findings of the bankruptcy court, legal conclusions are subject to de novo review. *In re Global Western Development Corp.,* 759 F.2d 724, 726 (9th Cir.1985). In addition, "the reviewing court must determine whether the trial court applied the proper legal standard to the facts." *In re Stratton,* 23 B.R. 284, 287 (D.S.D.1982).

## II. Avoidance of the Entirety Property

The Graves argue that the bankruptcy court erred as a matter of law when it vested in the bankruptcy estate title to real estate purportedly held by Donald and Rose Graves as tenants by the entireties. In its order in proceeding No. 1084, the bankruptcy court held that "the transfer of any property involved in Donald Graves' junk crusher business to Rose Graves is found to be fraudulent and is hereby AVOIDED pursuant to 11 U.S.C. § 544(b) [2] and IC. § 32–2–1–14; [3] the property is now vested in the bankruptcy estate pursuant to Bankruptcy Rule 7070." The bankruptcy court reasoned that the transfer of property from Donald Graves to Rose Graves was made with the intent to defraud creditors, I.C. § 32–2–1–14, and should be set aside. *Kourlias v. Hawkins,* 153 Ind.App. 411, 287 N.E.2d 764 (1972). Citing to *Arnold v. Dirrim,* 398 N.E.2d 442 (Ind.App. 1979), the court found six badges of fraud present in the transfer of property from Donald Graves to Rose Graves, creating an inference of actual fraudulent intent.

Relying on *In re Jeffers,* 3 B.R. 49 (Bankr.N.D.Ind.1980), the appellants argue that any property held by them as tenants

---

appellee's brief cogently pointed out the debtor's failure to designate an adequate record on appeal for this court's review. When confronted with this in oral argument, counsel for the debtor conceded that his argument regarding the bankruptcy court's factual findings could not be supported by the evidence, and this portion of the appeal was voluntarily withdrawn.

**2.** 11 U.S.C. § 544(b) provides:

(b) The trustee may avoid any transfer of an interest of the debtor and property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim....

**3.** I.C. § 32–2–1–14 allows the court to set aside transfers made with intent to defraud one's creditors. *Kourlias v. Hawkins,* 153 Ind.App. 411, 287 N.E.2d 764 (1972).

by the entirety, should not be included in the bankruptcy estate. While *Jeffers* holds that entirety property should not be included in a bankruptcy estate, the bankruptcy court in the case at bar held that the transfer of any property involved in Donald Graves' junk crusher business to Rose Graves was *fraudulent* and would be avoided under 11 U.S.C. § 544(b) and I.C. § 32–2–1–14. As to creditors, no tenancy by the entirety is created from a fraudulent conveyance of real estate. *Vonville v. Dexter*, 118 Ind.App. 187, 76 N.E.2d 856 (1948), *reh'g denied*, 118 Ind.App. 187, 77 N.E.2d 759. To the extent therefore, that the bankruptcy court's holding applies to the entireties' property, that property was properly included in the bankruptcy estate and the bankruptcy court's decision must be affirmed.

█ It is clear that the bankruptcy court found the transfer from Donald Graves to Donald and Rose Graves as husband and wife, fraudulent. The Graves claim that the business was transferred from Donald Graves to Rose Graves through a series of transactions, which took place on January 1, 1982. Some of the transfer documents evidencing these transactions were prepared by the Graves and notarized by their daughter. The documents are entitled, "General Assignment," "Assignment of Income," and "Assignment of Contract." In finding the transfers fraudulent the court noted that the transaction was hurried, was concealed from the public, was not done in the customary manner, was not for adequate consideration, did not alter Donald Graves' control over important business matters, and did not result in the actual transfer of any land by deed until over a year later. The transfer of land referred to by the bankruptcy court is evidenced by two deeds, dated February 8, 1983. In one of those deeds Donald Graves purports to convey six lots to himself and his wife, as tenants by the entireties. In the other, Donald Graves purports to convey a tract

of land to his wife. The bankruptcy court's finding that the transfers were fraudulent includes the property conveyed by Donald Graves to himself and his wife, as tenants by the entireties. This is made clear by the language of the bankruptcy court's opinion, which refers to "a series of transfers," the land that was "deeded at a later date," and the bankruptcy court's conclusion that "the transfer of any property involved in Donald Graves' junk crusher business" was fraudulent.

It is also made clear in the appellants' brief that the voided transfers included the entireties property. Appellants argue, "the court granted an avoidance of transfer occurring on January 1, 1982. *The transfer, by definition, included real estate that was owned by the debtor and his spouse as tenants by the entireties.*" At this point the appellants' argument was simply that entireties property could not be included in the bankruptcy estate. The argument, however, overlooked the well established rule that as to creditors defrauded no entireties property is created. After appellee had made this point in his brief, the appellants' argument switched tracks. In their reply brief, the appellants argue that "the real estate in question was not involved in the transfer, which documents were dated January 1, 1982." By completely changing their factual assertions, appellants hoped to convince this court that the entireties property was not a part of the fraudulent transfers voided by the bankruptcy court.

To support their new argument, the appellants contend that the entireties property was listed in a mortgage[4] executed on November 19, 1981 and recorded on November 25, 1981, to the Hicksville Bank. According to this mortgage the entireties property existed prior to any of the transfers in question. If that were true, then the February 8, 1983 conveyance from Donald Graves to Donald and Rose Graves, which purportedly created the entireties

---

4. The mortgage is referred to as Exhibit ZZ, but was not designated for the record on appeal and is therefore not properly before this court. This was admitted by the appellants' attorney, Roland Gariepy, at oral argument on January 30, 1987.

property, would obviously have been unnecessary. Donald Graves attempted to create the entireties property on February 8, 1983, as a part of his fraudulent attempt to transfer his junk crusher business in order to defraud his creditors. The bankruptcy court correctly found the transfers fraudulent and the entireties property was correctly vested in the bankruptcy estate.

### III.  Denial of Discharge

■ In proceeding No. 84–1088, the bankruptcy court denied discharge, holding that Donald Graves had knowingly and fraudulently committed acts proscribed by 11 U.S.C. § 727(a)(2), (3), and (4). Appellants argue that the denial of discharge was barred by the one year statute of limitations under 11 U.S.C. § 727(a)(2)(A). This argument completely ignores the bankruptcy court's very clear holding that appellants violated 11 U.S.C. § 727(a)(3) and (4), both of which are sufficient to justify the bankruptcy court's denial of discharge, and neither of which contain a one year statute of limitations. Beyond that, the bankruptcy court explicitly held that Graves had visited the Hicksville State Bank on numerous post-petition dates, exercising access privileges to safety deposit boxes, in violation of 11 U.S.C. § 727(a)(2)(B), which does not contain the one year statute of limitations. The bankruptcy court therefore properly denied the discharge.

### IV.  Sanctions

Appellee seeks fees and costs as a sanction for having to respond to this frivolous appeal. The bankruptcy rules provide for such a sanction.

> *(a) Signature*  Every petition, pleading, motion and other paper served or filed in a case under the Code on behalf of a party represented by an attorney, except a list, schedule, statement of financial affairs, statement of executory contracts, Chapter 13 Statement, or amendments thereto, shall be signed by at least one attorney of record in his individual name, whose office address and telephone number shall be stated. A party who is not represented by an attorney shall sign all papers and state his address and telephone number. The signature of an attorney or a party constitutes a certificate by him that he has read the document; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harrass, to cause delay, or to increase the cost of litigation. If a document is not signed, it shall be stricken unless it is signed promptly after the omission is called to the attention of the person whose signature is required. *If a document is signed in violation of this rule, the court on motion or on its own initiative, shall impose on the person who signed it, the represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including a reasonable attorney's fee.*

Bankruptcy Rule 9011 (emphasis added).

Much like Bankruptcy Rule 9011, Rule 11 of the Federal Rules of Civil Procedure requires that each pleading or motion be signed by an attorney or the party if the party is proceeding *pro se.* The rule then provides:

> The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

If a pleading violates this rule, the court "shall impose" an "appropriate sanction," which may include the amount of reasonable expenses and attorney's fees incurred by the other party because of the filing of the pleading or motion.

The Notes of the Advisory Committee on the Federal Rules make it clear that Rule 11's provisions are designed to "discourage dilatory or abusive tactics and [to] help streamline the litigation process by lessening frivolous claims or defenses." *See also Dominguez v. Figel*, 626 F.Supp. 368, 373 (N.D.Ind.1986). The core of Rule 11 is that the signature on the pleading certifies that "after reasonable inquiry [the pleading, motion, or other paper] is *well grounded in fact* and is warranted by existing law...." (Emphasis added). Thus, Rule 11 sanctions cannot be avoided by a merely subjective belief that the law or facts are a certain way; the "reasonable inquiry" language makes the test an objective one. *Indianapolis Colts v. Mayor and City of Baltimore*, 775 F.2d 177, 181 (7th Cir.1985); *Glick v. Koenig*, 766 F.2d 265, 270 (7th Cir.1985); *Dominguez*, 626 F.Supp. at 373.

The Seventh Circuit has made it absolutely clear that an abuse of the federal court system justifies the imposition of sanctions. In *Dreis & Krump Mfg. v. Intern. Ass'n. of Machinists*, 802 F.2d 247 (7th Cir.1986), the court stated:

Mounting federal caseloads and growing public dissatisfaction with the costs and delays of litigation have made it imperative that the federal courts impose sanctions on persons and firms that abuse their right of access to these courts. The rules, whether statutory or judge-made, designed to discourage groundless litigation are being and will continue to be enforced in this circuit to

the hilt—as a recital of opinions published by this court since the first of the year imposing sanctions for groundless litigation should make clear. *See Bacon v. American Federation of State, County, and Municipal Employees Council #1*, 795 F.2d 33 (7th Cir.1986); *Granado v. Commissioner*, 792 F.2d 91, 94 (7th Cir.1986) (per curiam); *Coleman v. Commissioner*, 791 F.2d 68 (7th Cir.1986); *Spiegel v. Continental Ill. Nat'l Bank*, 790 F.2d 638, 650–51 (7th Cir.1986); *Thornton v. Wahl*, 787 F.2d 1151 (7th Cir.1986); *Cannon v. Loyola University*, 784 F.2d 777, 782 (7th Cir.1986); *Wisconsin v. Glick*, 782 F.2d 670 (7th Cir. 1986).

The Graves have abused their right of appeal to this court by pursuing frivolous arguments.

By analogy, Rule 38 of the Federal Rules of Appellate Procedure is applicable to a district court sitting in an appellate capacity. That rule states: "If a court of appeals shall determine that an appeal is frivolous, it may award just damages and single or double costs to the appellee." *See Martin v. Commissioner*, 756 F.2d 38 (6th Cir. 1985). Costs may also be assessed against the attorney for the losing party who unreasonably multiplies proceedings. 28 U.S.C. § 1927. *See Lewis v. Brown & Root, Inc.*, 711 F.2d 1287, 1292 (5th Cir. 1983), *on reconsideration*, 722 F.2d 209 (5th Cir.), *cert. denied*, 467 U.S. 1231, 104 S.Ct. 2690, 81 L.Ed.2d 884 (1984). Courts have emphasized the need for notice and an opportunity to be heard before the imposition of sanctions.[5] *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980).

---

**5.** In this regard, the notes of the Advisory Committee on Rule 11 of the Federal Rules of Civil Procedure provide that a party seeking sanctions should give notice to the court and the offending party promptly upon discovering a basis for doing so. The notes make it clear that the time for imposing sanctions rests in the discretion of the trial judge. The appellee thoroughly briefed the issue of sanctions and the appellants were on notice that sanctions had

been put at issue by the time of the December 3, 1986 argument before this court. The appellants had a second opportunity to respond to the appellee's request for sanctions in oral argument on January 30, 1987, where the issue of sanctions was given full attention. Thus, the basic due process requirements of notice and an opportunity to respond were made available to the appellants.

■ The arguments made on appeal were frivolous. At oral argument on January 30, 1987, appellants' attorney, Roland Gariepy admitted that the appeal was not "totally well founded." That was an understatement. In their original brief, appellants argue that the entireties property was improperly included in the bankruptcy estate as a part of the fraudulent transfers, when as to defrauded creditors, Indiana law does not recognize entireties property. After being confronted with this point in the appellee's brief, appellants took a 180%al turn and argued that the entireties property was not part of the fraudulent transfers. At oral argument on January 30, 1987, appellants' attorney, Roland Gariepy, conceded that these factual assertions were not entirely consistent. These contradictory factual assertions could not possibly have been made in good faith. To support the new argument that the entireties property was not a part of the fraudulent transfers, appellants refer to a certain mortgage apparently executed on November 19, 1981, wherein the entireties property was apparently listed. The mortgage is referred to as Exhibit ZZ but was not designated for appeal and is not in the record. This may be because the appellants' reliance on the mortgage, to establish the existence of the entireties property before the January 1, 1982 transfers took place, is inconsistent with the rest of the record. The warranty deed creating the entireties property was executed on February 8, 1983. Thus, the property could not have been listed on the mortgage before that date. In short, appellants have twisted the facts to suit their own ends and have ignored clear Indiana precedent which holds that entireties property resulting from a fraudulent conveyance may be included in a bankruptcy estate.

In a further effort to reverse the bankruptcy court's sound opinion, the Graves argued that the bankruptcy court's factual findings were clearly erroneous. The Graves, however, totally failed to provide an adequate record for this court to determine whether the bankruptcy court had committed reversible error. It is the appellant's burden to make sure the record on appeal contains evidence supporting the claim of reversible error. *Trotter v. Klincar,* 748 F.2d 1177 n. 8 (7th Cir.1984). Without an adequate record, this court must uphold the bankruptcy court's determinations. *Casualty Indemnity Exchange v. Village of Crete,* 731 F.2d 457 (7th Cir.1984). An appeal is frivolous where the appellant does not cite to evidence in the record to support his claim. *Reynolds v. Humko Products,* 756 F.2d 469, 473–74 (6th Cir.1985).

At oral argument on December 3, 1986, counsel for the appellants withdrew his argument that the bankruptcy court's decision was not supported by the evidence. Unfortunately, by that time the appellee had been forced to thoroughly brief the issues. In his brief, the appellee spent a good portion of time carefully reviewing the evidence supporting the bankruptcy court's factual determinations in both of the bankruptcy court's orders. By the time counsel for the appellants had withdrawn this claim the court had also spent valuable time reviewing the unsupported arguments made by the appellants. Thus, the appellants' pursuit of unsupported arguments on appeal needlessly increased the cost of litigation. Given the record on appeal or lack thereof, there was simply no conceivable way that the bankruptcy court's factual findings could have been reversed.

The appellants' argument that discharge was improperly denied is not supported by the law. The bankruptcy judge clearly denied discharge pursuant to 11 U.S.C. § 727(a)(2)(B), .(a)(3), and (a)(4), and the order in proceeding No. 84–1088 clearly spells that out. In an attempt to have the bankruptcy court's decision reversed, the appellants focused only on § 727(a)(2)(A), and argued that the court improperly considered transactions which occurred prior to one year before the date of the filing of the petition. Even if the bankruptcy court did consider such transactions, its denial of discharge would obviously be proper under § 727(a)(3) and (4). Appellants' argument,

even if accepted as true, therefore, is not a ground for reversal. The argument is frivolous in that it isolates one subsection of the Bankruptcy Code and ignores the others which are not in its favor. After a reasonable inquiry, any attorney would know that the arguments made could not possibly lead to reversal in view of the bankruptcy court's clear reliance on § 727(a)(3) and (4). Like the argument that the bankruptcy court's factual findings are clearly erroneous, this frivolous argument needlessly increased the cost of litigation.

The appellants sought a stay at the bankruptcy court, pending disposition of this appeal. The bankruptcy judge denied the stay on October 30, 1986, holding that the appeal was fraught with vain arguments. While this material is not in the record, the court takes notice of this fact, to the extent that it further shows appellants' awareness that this appeal was frivolous.

This frivolous appeal should never have been brought. Appellants and their counsel have violated Bankruptcy Rule 9011, Rule 11 of the Federal Rules of Civil Procedure, and Rule 38 of the Federal Rules of Appellate Procedure (which applies by analogy), by bringing this frivolous appeal, by making arguments that are not well grounded in fact, and by ignoring law which is directly on point. Nothing in the record indicates whether counsel or the appellants are more blameworthy for bringing this appeal and making these arguments. At oral argument on January 30, 1987, attorney Gariepy suggested that the Graves had insisted on an appeal. Attorney Gariepy however, made inconsistent arguments, and failed to designate a proper record for appeal. The blame cannot entirely be laid on the Graves. Under these circumstances, joint and several liability is appropriate for the costs and attorneys fees incurred by the appellee and for the court's time in disposing of this frivolous appeal. *International Union of Bricklayers, etc. v. Martin Jaska, Inc.,* 752 F.2d 1401, 1407 (9th Cir.1985); *Colt Industries Operating Co. v. Index-Werke K.G.,* 739 F.2d 622 (Fed.Cir.1984). Accordingly, appellants and their attorney are hereby ordered to pay the reasonable attorneys fees and costs incurred by the appellee in defending this frivolous appeal.

Appellants and their attorney, Mr. Gariepy, must also be held accountable for the waste of judicial resources this appeal has caused. As the court noted in *Martin Jaska,* "one of the important purposes of sanctions is to encourage attorneys to be reflective about the issues they present for review. 'Counsel must realize that the decision to appeal should be a considered one ... not a knee-jerk reaction to every unfavorable ruling.'" *Martin Jaska,* 752 F.2d at 1406. In *Robinson v. Moses,* 644 F.Supp. 975 (N.D.Ind.1986), this court noted that a single hour spent by a federal judge on a case costs the government ($600.00). See Levin and Colliers, *Containing the Cost of Litigation,* 37 Rutgers L.Rev. 219, 227 (1985). The court also gave notice to future litigants that fines would be imposed on the basis of this formula. A conservative estimate of the time spent on this case is 6 hours, which includes research and writing of this order. Thus, appellants have cost the taxpayers at least $3,600.00 for filing this frivolous appeal. The court therefore finds that the appellants and their attorney are also jointly and severally liable for a fine of $3,600.00, as a further sanction for filing this frivolous appeal, said fine payable within thirty (30) days of this order.

The amount of reasonable attorneys fees and costs will be determined by the court. The appellee is hereby GRANTED ten (10) days from the date of this order to file a detailed request for fees and costs. The appellants and their attorney are also hereby ORDERED to pay $3,600.00 to the clerk of this court as a further sanction within thirty (30) days from the date of this order.