**B & H MANUFACTURING, INC., Plaintiff,**

v.

**FOSTER–FORBES GLASS COMPANY, A DIVISION OF AMERICAN NATIONAL CAN COMPANY, INC., Defendant.**

Civ. No. F 91–262.

United States District Court, N.D. Indiana, Fort Wayne Division.

July 29, 1992.

George Pappas, Fort Wayne, Ind., Ernie L. Brooks, Southfield, Mich., for plaintiff.

Robert S. Walters, James P. Fenton, Barrett & McNagny, Fort Wayne, Ind., Frederick J. Dorchak, Susan McHale, Douglas W. Wyatt, Thomas A. O'Rourke, Wyatt, Gerber, Burke & Boide, New York City, for defendant.

## ORDER

COSBEY, United States Magistrate Judge.

This matter is before the court[1] on the Plaintiff's, B & H Manufacturing, Inc. (hereafter "B & H"), Motion for Sanctions filed on May 13, 1992. On May 28, 1992, Foster–Forbes Glass Company, a Division of American National Can Company, Inc. (hereafter "Foster–Forbes") filed its response and on June 8, 1992, B & H submitted its reply. Both parties have submitted exhibits in support of their argument. For the reasons hereinafter provided, the motion for sanctions will be GRANTED.

## FACTUAL AND PROCEDURAL HISTORY

This is a patent case wherein B & H alleges that Foster–Forbes infringed some of B & H's patents for a system of applying heat shrink film to containers. However, that dispute is not what is at issue today. Rather, B & H is offended that Foster–Forbes failed to disclose until well after the commencement of the case and after much discovery, that the party named as a defendant by B & H (Foster–Forbes Glass Company, a Delaware corporation) is a mere shell corporation; and that the "real Foster–Forbes" is a Division of American National Can Company, Inc. (hereafter "ANCC"). In fact, until the relationship between Foster–Forbes and ANCC had been clarified ANCC was presumed to be a non-party or third party (as represented by ANCC itself).

Indeed, it is B & H's position that counsel for Foster–Forbes and ANCC fostered this confusion and allowed the Delaware corporation to masquerade as Foster–Forbes well knowing that it was only a shell corporation and that the Foster–Forbes division of ANCC should have been the true party defendant. Counsel for Foster–Forbes and ANCC say they were misled too—by B & H's filing of a complaint against the Delaware corporation and that they did not know until much later that there was a difference between the Delaware corporation and Foster–Forbes.

This case commenced on November 21, 1991, with B & H alleging in its complaint that: "On information and belief, Defendant, Foster–Forbes Glass Company ("Foster"), is a corporation organized and existing under the laws of the State of Delaware, having a place of business within this judicial district at East Charles Street, Marion, Indiana, 46952." *See* Complaint rhetorical ¶ 2. On January 13, 1992, Foster–Forbes responded by filing its answer and admitting these averments. Apparently that was the way things stood until B & H's counsel took the deposition of ANCC's

---

**1.** Pursuant to 28 U.S.C. § 636(b)(1)(A) parties may consent to a full-time United States Magistrate Judge to conduct "any and all proceedings in a jury or non-jury civil matter and order the entry of judgment in the case[,]." On the 28th day of July, 1992, the Plaintiff and Defendant consented to the Magistrate Judge as to the pending motion. On the 29th day of July, 1992, the Honorable William C. Lee, Judge of the District Court, referred the pending motion to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(c) to conduct proceedings relative to the pending motion and to the entry of a judgment thereon.

in-house counsel, Robert Stenzel ("Stenzel"), on April 24, 1992, at which time they finally became aware that Foster–Forbes was, in fact, a Division of ANCC.[2] B & H alleges that before the Stenzel deposition they thought that ANCC was only a third party since that is what had been represented to B & H, and the court, by counsel for Foster–Forbes (who also happen to be counsel for ANCC) in at least two documents filed just before the Stenzel deposition. B & H sees something perfidious in all of this and suggests that counsel for Foster–Forbes be sanctioned in the amount of $7,500 for bad faith.[3]

Foster–Forbes, for its part, suggests that B & H well knew that Foster–Forbes was an operating division of ANCC but that B & H's complaint was filed incorrectly because B & H's counsel failed to conduct an adequate pre-filing inquiry; furthermore, Foster–Forbes says that B & H's counsel really knew all along that ANCC should have been the true party defendant. In support of this, Foster–Forbes points to a letter from B & H's trial counsel to Foster–Forbes trial counsel on December 10, 1991, stating: "When the complaint was filed we telephoned Bob Stenzel, counsel for American National Can, to let him know that the complaint had been filed on the resident agent." Moreover, Foster–Forbes asserts that if B & H's attorneys did not already know it, they certainly learned by February 19, 1992, that Foster–Forbes was a division of ANCC when they took the deposition of Roger Erb ("Erb"), ANCC's Vice President of Engineering, and Steven Rhea ("Rhea"), Division Controller of Foster–Forbes.

It seems to be Foster–Forbes' position that B & H ignored all indications that Foster–Forbes was a division of ANCC until April 29, 1992, when counsel for B & H took Stenzel's deposition at which time it became perfectly clear that Foster–Forbes was not a "stand alone" legal entity and

was in fact a division of ANCC. Indeed, counsel for Foster–Forbes asserts that it was not until February 13, 1992, (following the Erb/Rhea depositions) that they even became aware that "there was an issue of whether the corporation and division of American National Can Company were separate entities." *See* Foster–Forbes' Memorandum in Opposition, pg. 10, rhetorical paragraph 20. This apparently is a reference to the Fed.R.Civ.P. 30(b)(6) depositions taken on February 13, 1992, wherein Erb testified on pages 6–7 as follows:

Q. Can you tell us what full time employment you've held from '64 to '92?

A. ... *Foster–Forbes purchased four of the Kerr Plants, and I moved with that purchase. So I've been with—officially with American National Can since 1983.*

Q. *What's your capacity with American National Can?*

A. *I'm Vice–President of Engineering.*

Q. Where are you located?

A. Marion, Indiana.

Q. *Is this the principal offices of the glass division?*

A. *This is the headquarters of the glass division.*

Q. *Are you Vice–President of Engineering for the glass operations?*

A. That is correct.

Additionally, Rhea testified as follows at pages 9–10 of his deposition:

Q. What kinds of documents did you collect or oversee the collection of?

A. *I'm Division Controller*, and employees that work for me gather data regarding sales volumes of labeled bottles.

Q. *You're the Division Controller— what does that mean?*

A. I'm in charge of accounting.

Q. *For?*

---

**2.** The case caption was amended shortly thereafter by agreement of counsel to its present styling.

**3.** B & H's motion and supporting briefs are so poorly drafted that it is difficult to ascertain

against who, and on what legal basis, B & H seeks sanctions. The court assumes from what can be gleaned from the filings that counsel for Foster–Forbes and ANCC are the targets of the motion.

A. *For the glass division of American National Can.*

Q. *For all of the Foster–Forbes plants, then?*

A. *Correct.*

And again at page 12:

Q. *Was it prepared for this deposition? You say it was prepared by somebody in your ...*

A. *Yes.*

Q. *And it's for the entire glass division?*

A. Yes. (Emphasis added).

One wonders, after reviewing these colloquies why the issue did not bubble to the surface sooner and certainly by February 13, 1992. Nonetheless, B & H asserts that even after this, Foster–Forbes' counsel continued to allow B & H's to operate under the mistaken assumption that Foster–Forbes was a separate legal entity and did nothing to disabuse B & H's counsel of that notion. Indeed, it would seem that even after the Erb/Rhea depositions Foster–Forbes' counsel responded to discovery only as it related to Foster–Forbes; resisting any extension of discovery to ANCC. This latter point is evidenced by the fact that in response to a B & H Request for Production Foster–Forbes only produced documents related to Foster–Forbes and not similar documents related to ANCC. Notwithstanding the assurances that counsel for Foster–Forbes had always treated the case for discovery purposes (at least since the Erb/Rhea depositions) as if B & H had sued ANCC (*see* Stenzel deposition pgs. 94–95) it is clear that this is patently false because by late April counsel had still only produced Foster–Forbes documents on the "Vaughn list"; studiously avoiding production of ANCC documents. *See* Stenzel deposition, pgs. 97–98. In fact, counsel for Foster–Forbes only chose to expand their document response to include ANCC when it became apparent that the ruse as to the proper party defendant could no longer be maintained. Indeed, as late as March (after it became apparent to Foster–Forbes' counsel that B & H may have sued the wrong entity) attorney O'Rourke was still "playing cat and mouse" with B & H's counsel over Document Requests that should have included ANCC documents. *See* Exhibit D and E to B & H's brief. Compounding the problem, counsel for ANCC later moved to modify a B & H subpoena served on ANCC by filing a motion under Fed.R.Civ.P. 45(c) to modify the "third-party subpoena." *See* Exhibit B to B & H's Brief in Support of Motion for Sanctions. This motion, filed on April 22, 1992, by attorney O'Rourke, counsel for both ANCC and Foster–Forbes, was denied that same day. Most telling, of course, is the chronology of events. On April 22, 1992, ANCC was referring to itself as a "third-party," yet one week later at the Stenzel deposition attorney Wyatt in a dumbfounding display of memory loss would simply deny that ANCC had ever taken that position and that ANCC had, in fact, always treated discovery as if it were a party—a view again clearly contrary to the attitude taken by attorney O'Rourke in his March 19, 1992 letter. *See* Stenzel deposition, pgs. 82–83.[4]

While perhaps technically ANCC was a "third-party" when it filed its motion to modify third-party subpoenas on April 22, 1992, it fails to explain how attorney Wyatt could exclaim at page 95 of the Stenzel deposition: "We have treated this case as if American National Can, once we understood what was happening, as the Defendant here." Indeed attorney O'Rourke's prior stonewalling and the fact that ANCC also objected on April 22, 1992, as a "non-party" to a B & H subpoena (a discovery tool designed here in part to explore the relationship between Foster–Forbes and ANCC) puts the lie to that statement. *See*

---

**4.** While Foster–Forbes can argue that B & H certainly should have been aware that Foster–Forbes was a division of ANCC, it cannot say that about the court which was totally unaware of the relationship, and which had relied on ANCC's representations about being a "third-party" or "non-party." *See* court Order of April 22, 1992, denying "Third–Party American National Can's Motion to Modify." Certainly, the need for candor with the court should have been apparent.

Exhibit A to B & H's Brief in Support of Motion for Sanctions.[5]

In short, B & H seeks sanctions from the court for Foster–Forbes' counsel's alleged bad faith during the discovery process as evidenced by the repeated representations that ANCC was a third-party to this litigation. *See* B & H's motion, pg. 2.

## DISCUSSION

The court's resolution of the current motion has been hampered somewhat by B & H's failure to set forth any legal basis for their sanctions request. Three alternatives deserve discussion: Fed.R.Civ.P. 11 (perhaps coupled with Fed.R.Civ.P. 7(b)(3) and 26(g)); 28 U.S.C. § 1927; and the inherent power of the court. Since B & H failed to discuss any of them, the Court will discuss them all.

### *Rule 11*

Federal Rule of Civil Procedure 11 states in pertinent part:

[The] signature of an attorney or party constitutes a certificate by the signer that ... to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or good faith argument for the extension, modification, or reversal of existing law ... [.]

Dovetailed with that Rule is Fed.R.Civ.P. 26(g) which states in pertinent part:

(g) **Signing of Discovery Requests, Responses, and Objections.** Every request for discovery or response or objection thereto made by a party represented by an attorney shall be signed by at least one attorney of record in the attorney's individual name, whose address shall be stated.... The signature of the attorney or party constitutes a certification that the signer has read the request, response, or objection, and that to the best of the signer's knowledge, information, and belief formed after a reasonable inquiry it is: (1) consistent with these rules and warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; (2) not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation; and (3) not unreasonable or unduly burdensome or expensive, given the needs of the case, the discovery already had in the case, the amount in controversy, and the importance of the issues at stake in the litigation....

If a certification is made in violation of the rule, the court, upon motion or upon its own initiative, shall impose upon the person who made the certification, the party on whose behalf the request, response, or objection is made, or both, an appropriate sanction, which may include an order to pay the amount of the reasonable expenses incurred because of the violation, including a reasonable attorney's fee.

B & H's motion never does get around to suggesting precisely what documents attorneys Wyatt and O'Rourke signed in violation of these rules. However, since B & H attached to its brief ANCC's "Objection of Non–Party" and the "Motion to Modify Third–Party Subpoenas," those are presumably the offending documents.

■■■ This being a patent case, the Federal Circuit would be the court of review for this question [6]; however, that circuit would employ the rulings of the Seventh Circuit on any issue regarding Rule 11

---

**5.** Foster–Forbes attempts to side-step the "third-party" or "non-party" representations made by ANCC to the court by suggesting that the Objection and Motion to Modify (attached as Exhibits A & B, respectively, to B & H's Brief in Support of Motion for Sanctions) were also filed in a California action where clearly ANCC was a non-party. The heart of the matter, however, is that Foster–Forbes counsel, O'Rourke and Wyatt, clearly undertook a course of action designed to obfuscate the true relationship between Foster–Forbes and ANCC (if not as to B & H's counsel, then certainly as to the court), and only gave up that course of action when it became apparent that their smoke screen would soon blow away. The upshot was that discovery became more difficult for B & H (and the court) than it should have been.

**6.** *See* 28 U.S.C. § 1295(a)(1).

**670**

sanctions. *See Abbott Laboratories v. Brennan*, 952 F.2d 1346, 1351 n. 3 (Fed.Cir. 1991), *citing*, *Atari, Inc. v. J S and A Group, Inc.*, 747 F.2d 1422, 1438–40 (Fed. Cir.1984).

A review of applicable Seventh Circuit decisions discloses that if a pleading violates Rule 11, the court "shall impose" an "appropriate sanction," which may include the amount of reasonable expenses and attorney fees incurred by the other party because of the filing of the pleading or motion. *Brown v. Fed'n of State Medical Bds.*, 830 F.2d 1429, 1433 (7th Cir.1987); *Szabo Food Services, Inc. v. Canteen Corp.*, 823 F.2d 1073, 1082 (7th Cir.1987), *cert. dismissed*, 485 U.S. 901, 108 S.Ct. 1101, 99 L.Ed.2d 229 (1988).

The Notes of the Advisory Committee on the Federal Rules make it clear that Rule 11's provisions are designed to "discourage dilatory or abusive tactics and [to] help streamline the litigation process by lessening frivolous claims or defenses." *See also Dominquez v. Figel*, 626 F.Supp. 368, 373 (N.D.Ind.1986).

█ The core of Rule 11 is that the signature on the pleading certifies that "after reasonable inquiry [the pleading, motion, or other paper] is *well grounded in fact* and is warranted by existing law ..." (Emphasis added). Thus, Rule 11 sanctions cannot be avoided by a merely subjective belief that the law or facts are a certain way; the "reasonable inquiry" language makes the test an objective one. *Indianapolis Colts v. Mayor and City of Baltimore*, 775 F.2d 177, 181 (7th Cir.1985); *Glick v. Koenig*, 766 F.2d 265, 270 (7th Cir.1985); *Dominquez*, 626 F.Supp. at 373.

█ Upon reviewing the allegedly offending documents, it seems clear enough that despite the fact that they are technically correct in denominating ANCC as a "third-party" or "non-party," they were designed at least in part to throw B & H off the scent as to ANCC being a proper party defendant. What is most disturbing, however, is ANCC's first "Specific Objection" (*see* attached Exhibit A to B & H's Brief in Support) objecting to B & H's obvious discovery attempt to find out the inter-rela-

tionship between ANCC and Foster–Forbes as "overly broad and burdensome"; all this despite the fact that counsel for Foster–Forbes knew by this time that B & H had sued a mere shell corporation. Moreover, counsel for Foster–Forbes could tell from the discovery sought that B & H was still attempting to understand how three entities were tied together, if at all: Foster–Forbes, Foster–Forbes the Delaware corporation, and ANCC. This inquiry was sparked no doubt to some degree by O'Rourke's muddled descriptions of the entities in a March 10, 1992 Memorandum in Support of a Protective Order (Exhibit B to B & H's Reply Brief) as well as his letter of March 19, 1992, applying (disingenuously it later turns out) the attorney-client privilege only to the division's documents, not ANCC's.

Nonetheless, despite the fact that Foster–Forbes objected to the discovery they apparently proceeded to produce "representative documents" (when they were produced, and to what extent the documents were "representative" the court cannot say) all at least arguably responsive to B & H's request.

Therefore, counsel for Foster–Forbes violated Rule 11 and Rule 26(g) by the filing of an "objection" to the subpoena because their objection was posed to an inquiry that they themselves had made necessary and had, in fact, perpetuated. Therefore, attorney O'Rourke's objection, when viewed within this context was interposed for an improper purpose such as to harass or cause unnecessary delay or the needless increase in the cost of litigation.

### 28 U.S.C. § 1927

█ Apart from focusing upon written pleadings B & H is also presumably seeking sanctions pursuant to 28 U.S.C. § 1927 which states:

Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiples the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy per-

sonally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

B & H's unstated reliance on 28 U.S.C. § 1927 comes from page 5 of their reply brief wherein they argue: "Foster's counsel's conduct, as well as his silence, misled B & H and this court and caused needless expenses and undue delay making an award of sanctions appropriate."

It would appear, that the Federal Circuit views sanctions under § 1927 as appropriate when an attorney's conduct "viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court." *See Julien v. Zeringue*, 864 F.2d 1572, 1575 (Fed.Cir.1989), *citing, Braley v. Campbell*, 832 F.2d 1504, 1512 (10th Cir.1987) (*en banc*). It would appear that the Seventh Circuit has substantially the same standard. *See Kotsilieris v. Chalmers*, 966 F.2d 1181 (7th Cir.1992), *citing, In re TCI Ltd.*, 769 F.2d 441, 445 (7th Cir.1985) (Bad faith can be demonstrated by subjective evidence of malice, objective evidence of reckless conduct, or indifference to the law.).

There seems little doubt that attorneys O'Rourke and Wyatt "unreasonably" and "vexatiously" multiplied the proceedings in this case by delaying disclosure that the named defendant was a mere shell corporation and that the true defendant was ANCC. Indeed, it would appear that much of their behavior after the Erb/Rhea depositions (where they most certainly would have become aware of the issue) was designed to shroud the true state of affairs in a thin veil, confusing to the court, if not B & H. The upshot was that B & H was required to invest additional time and effort digging out documents and exploring how three entities: Foster–Forbes, Foster–Forbes the Delaware corporation and ANCC, meshed together. This was an obvious blind alley—and attorneys Wyatt and O'Rourke knew it.

In a similar case, *Itel Containers Int'l Corp. v. Puerto Rico Management, Inc.*, 108 F.R.D. 96 (D.N.J.1985), the district court sanctioned defense counsel pursuant to 28 U.S.C. § 1927 because they continued to litigate the case, and filed repeated motions (even a counterclaim) all the time concealing from the court the fact that the court lacked subject matter jurisdiction due to a lack of diversity of citizenship. What inspired defense counsel in *Itel Containers* to take such action is even more hazy than the possible motivation of attorneys Wyatt and O'Rourke here. Nonetheless, like the plaintiff in *Itel Containers*, B & H was forced to incur additional expenses that would not have been necessary if defense counsel had simply engaged in some candor and had conformed their conduct to the mandates of the statute. Rather than that, however, defense counsel saw an opportunity to gain some advantage (or at least visit some inconvenience on an opponent) by fostering a misperception in part created through the use of confusing labels applied to Foster–Forbes, Foster–Forbes the Delaware corporation and ANCC (*see* attorney O'Rourke's Memorandum in Support of a Protective Order filed March 10, 1992) as well as through the branding of ANCC a "non-party" or "third party." When finally cornered on this at the Stenzel deposition, attorney Wyatt employed breathtaking dexterity by simply reversing his field and pretending it all had never happened. These repeated instances of unreasonable and vexatious conduct all seem to have been inspired with a view to maximizing B & H's troubles with discovery, and even extended to enlisting the court's assistance in an effort to foil B & H.[7] At a minimum it evinces deliberate recklessness.

■ As a final matter, Foster–Forbes makes the argument that B & H's counsel was negligent by not doing a pre-filing inquiry so as to name the proper party defendant in the first place, and that they were equally misled. A similar argument was raised and rejected in *Itel Containers*

---

7. The Court does not perceive that local counsel for Foster–Forbes was in any way involved in this behavior nor did they sign any of the allegedly offending documents that would give rise to sanction responsibility under Fed.R.Civ.P. 11, 26(g). Therefore, sanctions will not be imposed against Foster–Forbes' local counsel.

672

and a like result should apply here. First, while B & H's counsel should have conducted a pre-filing inquiry so as to properly name a party defendant Foster–Forbes' answer simply admits the averments of the Plaintiff's complaint and does nothing to suggest that ANCC should be the proper party defendant. Counsel for Foster–Forbes also had pre-filing responsibilities and could have easily addressed the point early on in the case. *See* Fed.R.Civ.P. 12(b)(7) and Fed.R.Civ.P. 19. Moreover, even when defense counsel knew the true state of affairs and learned that B & H was suspicious as to the interrelationship between Foster–Forbes and ANCC they continued to assert that discovery on the point was "overly broad and burdensome," and agreed to produce only "representative documents." *See* Exhibit A to B & H's Brief in Support, Specific Objection 1. By then counsel for Foster–Forbes was no longer misled—they were seeking to mislead. While it is true that B & H probably should have been more diligent in conducting a pre-filing inquiry, they had a right to believe that they were dealing with honorable adversaries who would comply with the mandates of Fed.R.Civ.P. 11 and who would not seize upon a mis-step to unreasonably and vexatiously multiply the proceedings in violation of 28 U.S.C. § 1927.

Accordingly, for all of these reasons sanctions will be imposed against attorneys Wyatt and O'Rourke pursuant to 28 U.S.C. § 1927.

### Inherent Power of the Court

■ In contrast to 28 U.S.C. § 1927 it has seemingly been settled that a finding of bad faith is required for sanctions under the court's inherent powers. *See United States of America v. Wallace,* 964 F.2d 1214, 1217 (D.C.Cir.1992), *citing, Roadway Express, Inc. v. Piper,* 447 U.S. 752, 766, 100 S.Ct. 2455, 2464, 65 L.Ed.2d 488 (1980) ("The trial court did not make a specific finding as to whether counsel's conduct in this case constituted or was tantamount to

bad faith, a finding that would have to precede any sanction under the court's inherent powers.") In addition, the standard appears to be one of subjective bad faith. *See* M. Derfner and A. Wolf, *Court Awarded Attorney Fees* § 4.02 (1991).

Here, it is not necessary for the court to make a specific finding of subjective bad faith by O'Rourke and Wyatt because the court has already determined from an objective point of view that they engaged in deliberate recklessness with an apparent design to thwart B & H's legitimate discovery requests or to maximize B & H's discovery efforts. Therefore, since B & H has already met the lesser standard for an award of sanctions, the court does not need to discuss a more stringent test. *See United States of America v. Wallace,* at 1217.

### The Amount of Sanctions

■ B & H requests $7,500 as a sanction against Foster–Forbes. However, B & H has tendered no affidavits in support of their claim, and as the court earlier instructed counsel, any party seeking an award of attorney fees bears the burden of documenting to the satisfaction of the district court the "appropriate hours expended and hourly rates." *See* court's Order of March 25, 1992, pg. 3, 1992 WL 176987, *citing, Zabkowicz v. West Bend Co., Div. of Dart Indus.,* 789 F.2d 540, 548 n. 8 (7th Cir.1986) (Title VII case). Moreover, counsel for B & H has already demonstrated an ability to submit "outrageously excessive" claims for attorney fees (as noted in the court's Order of March 25, 1992, at pg. 4, 1992 WL 176987) and this request for sanctions appears to be a similar overstatement. In addition, as earlier noted by the court some of this dispute could have been obviated if B & H had done a proper pre-filing inquiry. What B & H is now seeking by way of attorney fees is probably nothing more than the time that they originally saved in not doing an adequate pre-filing inquiry.[8] In any event, it would now be an extremely difficult task for the court to

---

**8.** *Most of the sanctions would presumably be awardable pursuant to 28 U.S.C. § 1927, however, that statute only allows for "excess costs, expenses, and attorney fees reasonably incurred*

*because of such conduct."* (emphasis added). *See generally,* Debra T. Landis, Annotation, *What Conduct Constitutes Multiplying Proceedings Unreasonably and Vexatiously So As to*

trace and dissect the time that should have been spent on the pre-filing inquiry, from the additional time spent in pursuing discovery and discovery sanctions. Finally, the court has invested quite enough time already umpiring the squabbling of these litigants and it does not seem to be a good utilization of the court's time to pour over attorney time sheets given these foregoing considerations.

Therefore, upon review of the record[9] and taking judicial notice of the proceedings that have occurred before the undersigned Magistrate Judge regarding matters of discovery, and having reviewed and considered B & H's Motion for Sanctions and Brief and Reply Brief, the Court finds that the sum of $1,500 is an adequate sanction against attorneys O'Rourke and Wyatt.

### CONCLUSION

B & H's Motion for Sanctions is GRANTED and attorneys Wyatt and O'Rourke shall pay to counsel for B & H the total sum of $1,500 as a sanction.

---

*Warrant Imposition of Liability On Counsel Under 28 U.S.C. § 1927 For Excess Costs, Expenses, and Attorney Fees,* 81 A.L.R.Fed. 36 (1991).

9. Neither side requested a hearing on the motion and the record was amply developed such that the court did not feel that one was necessary. An evidentiary hearing is usually not necessary in any event. Landis, Annotation, *supra,* at 49.