NELSON et al., Appellants,

v.

TAOKA, Appellee; ROHRS, Appellee.

[Cite as *Nelson v. Taoka* (1992), 82 Ohio App.3d 101.]

Court of Appeals of Ohio,
Lucas County.

No. L–91–114.

Decided Aug. 21, 1992.

*David P. Rupp,* for appellants.

*Thomas R. Kelly* and *Robert D. Warner,* for appellee L. Mari Taoka.

*Peter R. Casey III,* for appellee Kenneth Rohrs.

WOLFF, Judge.

Appellants, Wallace and Jane Nelson, appeal from a summary judgment rendered against them and in favor L. Mari Taoka, on their claim of legal malpractice against Taoka. The summary judgment, in effect, also disposed of the third-party complaint against Kenneth Rohrs.

Until the early 1980s, the Nelsons had been very successful cattle farmers. By that time, they had acquired seven hundred sixty acres of farmland and were raising and selling between five thousand and six thousand head of cattle per year. Beginning in 1980, the farming operations began to incur substantial losses. Between 1980 and 1984, the Nelsons reported $1,489,224 in losses on their federal income tax returns.

During the 1970s and early 1980s, the Nelsons' primary lender was Defiance Production Credit Association ("Defiance PCA"). By 1983, the Nelsons owed Defiance PCA $2,186,534, with interest accruing daily in the amount of $763.02. The Nelsons were unable to service this debt. Defiance PCA threatened to foreclose on the property. In order to prevent foreclosure, the Nelsons entered into a loan advancement agreement with Defiance PCA on January 21, 1983. According to the agreement, Defiance PCA agreed to extend the repayment of the Nelsons' existing loans, as well as extend an additional $1,000,000 in capital, secured by a second mortgage on six hundred of the seven hundred sixty acres owned by the Nelsons. In return, the Nelsons agreed to substantially scale back their operation. This included the sale of livestock, real estate, and stock, and the recovery from the Nelsons' sons of $300,000 that previously had been advanced by Defiance PCA to the Nelsons. The loan agreement stipulated an expiration date of June 1, 1983.

By March 1983, the Nelsons had breached several provisions of the agreement. Consequently, Defiance PCA instituted foreclosure proceedings in Henry County, Ohio, in July 1983. The Nelsons approached their attorney, Kenneth Rohrs, to represent them in bankruptcy proceedings. Rohrs, who had no experience in bankruptcy matters, referred the Nelsons to Taoka to handle the proceedings. Taoka had expertise in the area of Chapter 11 bankruptcy proceedings, but prior to the Nelsons' case had never handled a Chapter 11 involving a farm. Taoka filed a petition for reorganization under Chapter 11 of the federal Bankruptcy Code on November 17, 1983. The state foreclosure proceeding was automatically stayed pursuant to Section 362(a), Title 11, U.S.Code, pending the resolution of the federal action.

On December 7, 1983, Defiance PCA filed a motion for modification of the stay in accordance with Section 362(d). Defiance PCA sought the removal of the stay and permission to proceed in state court, alleging, *inter alia,* that the

property securing the indebtedness was worth less than the indebtedness, that the collateral lacked "adequate protection," that the debtors had "no equity in the property," and that the Nelsons had no reasonable prospect of reorganization.

Relief from a stay is authorized pursuant to Section 362(d)(1)(2) when there is a lack of adequate protection of the collateral or when the debtor has no equity in the collateral. The stay automatically terminates by operation of law thirty days after a request for relief pursuant to subsection (d) unless the court orders its continuation upon a request for a hearing and determination under subsection (d).

On December 7, 1983, the bankruptcy court sent written notification to Taoka that Defiance PCA had filed a motion for relief from stay. The court noted that unless a timely request for a hearing was made within fifteen days, the relief requested would be granted. On January 4, 1984, the Nelsons moved for an extension of time within which to respond to Defiance PCA's motion. On January 12, 1984, the bankruptcy court granted the extension and scheduled a hearing for January 19, 1984. Defiance PCA objected to the extension, citing Taoka's failure to respond within the fifteen-day period and pointing out the automatic expiration of the stay on January 4, 1984. The bankruptcy court sustained Defiance PCA's motion for modification of the stay on January 19, 1984.

Defiance PCA then successfully foreclosed its security interest in the Nelsons' property in the state foreclosure action. The Nelsons then brought an action for legal malpractice against Taoka predicated upon the failure to challenge the motion for relief from stay. Taoka then filed a third-party complaint against Rohrs.

The Nelsons and Taoka moved for summary judgment. Taoka's motion was sustained on the basis that there was no evidence of proximate cause. It is from this judgment that the Nelsons appeal, advancing a single assignment of error as follows:

"The trial court erred in awarding summary judgment in favor of defendant L. Mari Taoka."

■ In order to prevail on a claim of legal malpractice, the plaintiff must establish three elements: (1) breach of a duty by the attorney, (2) proximate cause, and (3) damages. *Belfer v. Spiegel* (1984), 18 Ohio App.3d 64, 65, 18 OBR 178, 480 N.E.2d 825, 826.

■ In this case, there can be no doubt that a duty was breached. Taoka, as an attorney of record, had a duty to timely respond to the motion to modify the stay. She failed to do so. Likewise, there can be no doubt that the

Nelsons eventually suffered damage. Defiance PCA successfully foreclosed on its security interest, which ultimately caused the Nelsons to lose their farm. The more problematic issue, however, is whether Taoka's breach of duty proximately caused the Nelsons' damage.

In this case, a hearing was held on the motions for summary judgment. The trial court sustained Taoka's motion, finding as follows:

"The fact in this particular case is the question is [*sic*] whether or not the failure to object to PCA's request for relief from bankruptcy was such that it caused the demise [*sic*] of Wallace Nelson and his wife. But of course it didn't.

"Wallace Nelson and his wife got themselves into a situation that was when you—when you have a friend in the PCA, they're lending you that kind of money and you reneg [*sic*] on the loan, all of a sudden you haven't got a friend anymore. And you are not going to be very successful when you go to them and say, 'Look, I have reorganized. I want yet another—yet another extension.' PCA is going to say, 'Look, we've been two extensions with you, and we're not going to do it again. We are just not going to do it again,' and one of the problems we have here is that notwithstanding the fact that there may have been a failure to object on the part of Ms. Taoka, let's accept that the question now is hey, you are on the death bed, now you have already fallen off the edge of the bed. You reneged on this date, on this date, and now you then—it's got to be proximate cause ... I don't find any proximate cause here. I don't—I don't see that reorganization was really a viable option."

In reaching this conclusion, the court relied upon *Belfer, supra. Belfer* involved a claim of legal malpractice against two attorneys who failed to timely file a notice of appeal challenging the trial court's determination that appellee had given a one-half interest in his residence to his girlfriend. Notwithstanding the omission, the Cuyahoga County Court of Appeals found that there was no causal connection between the attorneys' alleged malpractice and the appellee's loss of his home. The court held that there was "no reasonable possibility that the trial judge's decision determining that the transaction was a gift would have been reversed on appeal. This court is persuaded that appellants' negligence did not proximately cause damage to the appellee." *Id.*, 18 Ohio App.3d at 66, 18 OBR at 179, 480 N.E.2d at 827.

The Nelsons contend that in order to prove proximate cause, they were required to prove that, but for Taoka's failure to object to Defiance PCA's motion for relief from stay, the motion would not have been sustained and their reorganization plan would have been confirmed by the bankruptcy court.

In our judgment, whether Defiance PCA's motion for relief from stay would have been overruled, had it been opposed, is not dispositive of this appeal. Assuming *arguendo* that the motion had been overruled, the Nelsons nevertheless faced the hurdle of whether they could have successfully reorganized. Stephen Diller, the attorney retained by the Nelsons following Taoka's withdrawal, testified in his deposition that, in his opinion, the stay would have been extended if Defiance PCA's motion had been opposed. However, he also stated that this would only have been the "first round." An extension would only have postponed a ruling on the motion for relief from stay. The Nelsons would still have had to survive the final hearing on the motion for relief from stay. According to Diller, he would have pushed to "cut a deal" before the final hearing rather than face the "risk" of not prevailing at the final hearing. Thus, if the stay had been continued, it would have provided a delay in the proceedings. It would not have assured, or even made probable, success in opposing the motion for relief from stay, confirmation of the reorganization plan, or a successful reorganization.

■ We now consider whether Taoka's failure to object to the motion to modify the stay was the proximate cause of the Nelsons' loss of property. The Nelsons maintain that, in order to have withstood summary judgment, they were only required to prove that their reorganization plan would have been confirmed by the bankruptcy court, not that reorganization would ultimately have been successful. We disagree.

The likelihood that the bankruptcy court would have confirmed the Nelsons' reorganization plan had no bearing on whether the Nelsons sustained damage due to Taoka's alleged malpractice. The damage at issue in this appeal resulted from the Nelsons' loss of their farm, not the loss of an opportunity to have a reorganization plan confirmed. Plan confirmation alone could not guarantee that the Nelsons would not have lost their property. The only way to ensure against such a loss was to successfully reorganize. Accordingly, in order to prove that Taoka's alleged malpractice proximately caused their damage, the Nelsons were required to show that, but for Taoka's failure to object to Defiance PCA's motion, they could have successfully reorganized.

As proof of proximate cause, the Nelsons offered the expert testimony of Grady Pettigrew, a retired nine-year veteran of the federal bankruptcy bench who, at the time of the malpractice action, was practicing bankruptcy law. He testified that several factors were essential in determining whether a reorganization would be successful, most important of which was whether the debtor was able to repay the debt. Typically, the most common source of repayment was a partial liquidation of the debtor's assets or a scale back of operations. The income generated by either course of action would then be

available to pay creditors.   Pettigrew stated that if the debtor was unwilling to partially liquidate, the debtor needed an extension of credit from his creditors or an infusion of additional capital.

The Nelsons cite the following excerpt from Pettigrew's deposition as evidence of proximate cause:

"A.   I believe that at the time the motion for relief from stay was filed, the case the Nelsons had filed was a viable case and one that could have ended in confirmation of a plan of reorganization.

"Q.   You keep using the word could, but in terms of probability, can you state with certainty and probability that it would have been successful?

"A.   I believe the chances of it being successful were greater than the chances of it not being successful."

Reading this excerpt in context, Pettigrew clearly was referring to the probability that a reorganization plan would have been approved, not that a reorganization would have been successful.   As we previously stated, in order to show proximate cause, it was necessary for the Nelsons to establish that they could have successfully reorganized.

The only evidence offered by Pettigrew in his deposition that was relevant to whether the Nelsons could have successfully reorganized is as follows:

"Q.   How do you know the Nelsons would be able to reorganize in this particular case, or do you know that?

"A.   That's the heart of it, isn't it?   And I want to make the analogy to medicine.   I know that when you have a sick patient, as long as you keep them alive, there is some glimmer that they may get well.

"Q.   Some glimmer?

"A.   I also know if you have a sick patient in medicine and that patient dies, with the state of medical art that we have today, it's over.   In the Chapter 11 case, and the focus that I have was at the time the motion for relief from stay was filed, was this a viable Chapter 11 case, and the way I answered the question is yes."

Although this is some evidence of proximate cause, it does not rise to the requisite level of sufficiency necessary to withstand a motion for summary judgment.   Under Civ.R. 56(C), when the moving party does not bear the burden of proof of an issue at trial, he may move for summary judgment. The nonmoving party must respond by "producing evidence in compliance with Civ.R. 56(C) that is sufficient to support a finding that a jury could reasonably render a judgment in a non-moving party's favor.   *Anderson v.*

*Liberty Lobby, Inc.* (1986), 477 U.S. 242 [106 S.Ct. 2505, 91 L.Ed.2d 202]. * * * To meet this burden, the non-moving party must produce more than a mere scintilla of evidence to support his claim since he must be able to demonstrate that he is entitled to judgment in his favor. * * * *While the court cannot usurp the jury's role of assessing the credibility or weight of the evidence the court must assess the sufficiency of the evidence.* * * * *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.* (1986), 475 U.S. 574 [106 S.Ct. 1348, 89 L.Ed.2d 538]. If the court determines that, when the evidence is construed more strongly in the non-moving party's favor, there is no genuine issue of material fact and a reasonable jury could not find for the non-moving party, then the moving party is entitled to judgment as a matter of law." (Emphasis added.) *Sibberson v. Mercy Hosp.* (Mar. 31, 1989), Lucas App. No. 88–236, unreported 1989 WL 29846.

To be sufficient to withstand summary judgment, Pettigrew's testimony would have had to establish more than that there was a "glimmer" of a possibility that the Nelsons could have successfully reorganized. Probability connotes more than a slight chance that something will occur. The Ohio Supreme Court has defined "proximate cause" as follows:

"Traditional proximate cause standards require that the trier of the facts, at a minimum, must be provided with evidence that a result was more likely than not to have been caused by an act, in the absence of any intervening cause. " * * *

"Probability is most often defined as that which is more likely than not. * * * The use of the words 'maybe' and 'around,' does not connote that there is a probability; those words, in the context used, could mean either more than 50%, or less than 50%. Probable is more than 50% of actual." (Citations omitted.) *Cooper v. Sisters of Charity, Inc.* (1971), 27 Ohio St.2d 242, 251, 253, 56 O.O.2d 146, 151, 152, 272 N.E.2d 97, 103, 104.

Under this definition, a "glimmer" of a possibility is not a probability. Therefore, Pettigrew's testimony was insufficient, as a matter of law, to establish the probability of the success of a reorganization.

Our review of the record reveals that there is overwhelming evidence which refutes the possibility that the Nelsons could have successfully reorganized. For example, Stephen Diller testified in his deposition that Wallace Nelson adamantly refused to scale back his operations and flatly refused to sell any of his property. This intransigence on Wallace Nelson's part was manifest from the time that he breached the loan advancement agreement shortly after the contract was executed. Moreover, the Nelsons unsuccessfully sought additional financing but took no other action which was likely to help them

satisfy their debt. The Nelsons also had the opportunity to reach a settlement during the pendency of the state foreclosure action which would have enabled them to at least keep their farm residence, although they would have lost all other assets. Stephen Diller encouraged the Nelsons to accept the offer. Jane Nelson agreed and signed the settlement, but Wallace Nelson steadfastly refused. In short, the Nelsons had no way to repay their creditors, the hallmark of successful reorganizations.

Given these undisputed facts, reasonable minds could only conclude that there was no possibility that the Nelsons could have successfully reorganized.

We overrule the assignment of error.

The judgment of the trial court will be affirmed.

*Judgment affirmed.*

FAIN, P.J., and GRADY, J., concur.

MIKE FAIN, P.J., WILLIAM H. WOLFF, JR., and THOMAS J. GRADY, JJ., of the Second Appellate District, sitting by assignment.