28 F.3d 1213
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Ronald R. GERBER and Alice L. Gerber, Plaintiffs-Appellants,
v.
Roland W. GARIEPY, Defendant-Appellee.
 No. 93-3409.
 United States Court of Appeals, Sixth Circuit.
 July 12, 1994.
 
 Before BOGGS and SILER, Circuit Judges, and WELLFORD, Senior Circuit Judge.
 WELLFORD, Senior Circuit Judge.
 
 
 1
 Ronald Gerber, his wife, Alice Gerber, Ohio residents, and the Ohio corporation which they owned as sole shareholders, R & B Equipment, Inc. ("R & B"), brought suit against their former attorney, Roland W. Gariepy, an Indiana resident, for malpractice and for negligent conduct as an attorney in representing them, principally with respect to unsuccessful bankruptcy proceedings involving the proposed reorganization of R & B. The suit is based upon diversity jurisdiction. The plaintiffs claimed there was a "controversy involving more than $10,000."[1] Gariepy denied his negligence and contended that his conduct was not the proximate cause of any damage claim of any of the plaintiffs.
 
 
 2
 We recite the underlying facts from the statement in Mr. and Mrs. Gerber's brief:
 
 
 3
 In 1986 the Gerbers, the owners and operators of a truck repair, sales and service business known as R & B Equipment, Inc., encountered financial difficulties when the bank that had long serviced their accounts merged with a multi-state institution. After initial attempts to resolve their financial difficulties caused by the "demand" nature of their financing, the Gerbers consulted with and employed Gariepy to represent them.
 
 
 4
 Gariepy advised the Gerbers that he was qualified and competent to represent them, particularly with regard to banking law and bankruptcy proceedings. In the course of his representation of them, Gariepy advised the Gerbers that they should file for Chapter 11 relief under the U.S. Bankruptcy Code and he proceeded to file same for R & B Equipment, Inc. on January 29, 1987 and for the Gerbers individually on June 23, 1987.
 
 
 5
 Ultimately, the district court granted Gariepy's motion for summary judgment after various submissions by each side. Additional pertinent facts were noted by the district court:
 
 
 6
 The land and building out of which R & B operated (R & B's business premises) were owned by the Gerbers. A mortgage on R & B's business premises was held by United National Bank (UNB). UNB had also loaned money to R & B and those loans were secured by most of R & B's assets.
 
 
 7
 R & B began experiencing financial difficulties and, in January of 1987, UNB took a judgment against plaintiffs and R & B in excess of $235,000 in the Van Wert County Court of Common Pleas. The court ordered that R & B's assets and its business premises be sold to satisfy that judgment.
 
 
 8
 ....
 
 
 9
 These bankruptcy petitions automatically stayed the sale of R & B's assets and business premises. However, on October 23, 1987, UNB filed motions for relief from stay and abandonment in both bankruptcy actions in an attempt to satisfy its state court judgment. Gariepy filed objections to UNB's motion in the R & B proceeding but failed to file any such objections in the personal proceeding. On November 25, 1987, the Bankruptcy Court granted UNB's motion for relief as to R & B's business premises. On January 25, 1988, Gariepy filed a motion for reconsideration of that order and the court set it for hearing on January 27, 1988.
 
 
 10
 Gariepy was unable to [sic] that hearing and retained the services of Kenneth C. Baker (Baker) of Eastman & Smith to represent the Gerbers and R & B at the hearing. Prior to the hearing, Baker negotiated an agreement with UNB whereby UNB agreed to cancel a sheriff's sale of R & B's business premises that was scheduled for February 15, 1988 which gave the Gerbers 60 days to raise $170,000 to buy out UNB's position. The Gerbers were unable to raise the necessary funds and, pursuant to the terms of the agreement, UNB obtained relief from stay and sold R & B's business premises and assets. R & B's Chapter 11 petition was dismissed on July 19, 1988. The Gerbers' personal bankruptcy is still ongoing and they are operating on a five-year workout plan.
 
 
 11
 The district court concluded that "the Gerbers have failed to come forward with sufficient evidence to demonstrate that there is a genuine issue of material fact as to the issue of proximate cause," and thus granted the defendant's summary judgment motion. The plaintiffs moved for reconsideration and another district judge denied that motion. He noted that the plaintiffs had failed to file their "expert's" deposition and that there was no sufficient basis to admit other "supplemental evidence" after judgment had been entered against the plaintiffs. After the defendant's counterclaim had been dismissed, a notice of appeal was filed.
 
 
 12
 We first must decide which parties are before this court on appeal. Rule 3(c) of the Federal Rules of Appellate Procedure was recently amended. It states in relevant part:
 
 
 13
 (c) Content of the Notice of Appeal. A notice of appeal must specify the party or parties taking the appeal by naming each appellant in either the caption or the body of the notice of appeal. An attorney representing more than one party may fulfill this requirement by describing those parties with such terms as "all plaintiffs," "the defendants," "the plaintiffs A, B, et al.," or "all defendants except X."
 
 
 14
 In the Note to subdivision (c) regarding the 1993 amendment, the Advisory Committee states that "[t]he test established by the rule for determining whether such designations are sufficient is whether it is objectively clear that a party intended to appeal."
 
 
 15
 Rule 3(c) became effective December 1, 1993. The notice of appeal was filed on April 7, 1993. The Supreme Court, in its order amending the Federal Rules of Appellate Procedure, stated:
 
 
 16
 That the foregoing amendments to the Federal Rules of Appellate Procedure shall take effect on December 1, 1993, and shall govern all proceedings in appellate cases thereafter commenced and, insofar as just and practicable, all proceedings in appellate cases then pending.
 
 
 17
 61 U.S.L.W. 4395 (Apr. 27, 1993). We do not decide whether Rule 3(c), as amended, applies retroactively to all cases and we limit our holding to the specific facts of the case at bar. R & B is not mentioned in the body of the notice of appeal. The appellants' brief essentially speaks only of asserting the rights of the Gerbers. Since R & B is not mentioned in the body of the notice of appeal nor effectually specified as a plaintiff in the appellant's brief, it is not "objectively clear" that R & B is a party to this appeal. We resolve our doubt, however, that R & B is a party in favor of the corporation, but hold that the Gerbers are not the proper parties to bring an appeal on behalf of the bankrupt corporation, in any event. Any claim of the corporation regarding the administration of its bankruptcy proceedings could be brought only by the trustee in bankruptcy for R & B.
 
 
 18
 A claimed injury to a corporation in Ohio must be brought by the corporation itself or in the form of a derivative action. Adair v. Wozniak, 492 N.E.2d 426, 429 (Ohio 1986). There was no attempted derivative action in this case. "[A]n action to redress injuries to a corporation ... cannot be maintained by a stockholder in his own name.... The general rule is applicable in cases where the individual is the sole stockholder." Canderm Pharmacal v. Elder Pharmaceuticals, 862 F.2d 597, 602-03 (6th Cir.1988) (citations omitted). Any right or claim of the corporation, furthermore, would be that of the trustee in bankruptcy for R & B. The complaint sets out a number of allegations pertaining to claims of the corporation against the defendant because of the defendant's alleged misconduct, inactions, and failure to file timely pleadings in the corporate bankruptcy. We do not undertake to decide this issue because the Gerbers lack standing to represent R & B's interests for the reasons stated.
 
 
 19
 The complaint sets out that a sheriff's sale of real property was effectuated in 1988 and relief from a bankruptcy stay was procured by United National Bank, a creditor, when "the Plaintiffs were subsequently unable to raise [$170,000]." That complaint does not make it clear as to the owner of the foreclosed property, but refers to it as "subject real property" and also refers to an "executory lease," and "complete liquidation of Plaintiff's assets." The complaint avers that because of the defendant's asserted negligence and malpractice, "Plaintiffs have lost real and personal corporate and individual property, their business and good will." The Gerbers have no standing to assert a claim as to their "personal corporate property" as set out hereinabove.
 
 
 20
 The plaintiffs, Ronald and Alice Gerber, have standing by reason of their appeal to contest the judgment rendered for the defendant only to the extent of their individual interest in and loss of personal and non-corporate property, if any, proximately caused by the defendant's alleged negligent or grossly negligent conduct. The district court found that "the land and building out of which R & B operated ... were owned by the Gerbers," on which the United National Bank had a mortgage. (Bank loans were secured also by "most of R & B's assets"). The foreclosure sale was of R & B's "business premises." Based on the evidence presented to the district court with respect to the defendant's motion for summary judgment, we find a sufficient basis for the judgment granted the defendant, particularly with respect to the plaintiffs' inability to demonstrate proximate causation.
 
 
 21
 The real issue before us, then, is whether the district court was in error in denying the Gerbers' motion for reconsideration buttressed upon the asserted inadvertent and excusable failure to file their expert's deposition. We find no error in the district court's ruling that it was not the defendant's burden to file Robert Woodley's deposition and that "it was plaintiffs' burden to submit Woodley's deposition if they were to rely upon it." We take note, furthermore, that Woodley's testimony would be of doubtful value on the bankruptcy issues at stake. He was an admitted general practitioner and testified that "less than 25 percent [of his practice] would be business related." He claimed only about ten percent of his time was devoted to bankruptcy[2] with "very little" experience in Chapter 11 cases (only four or five since 1981). He had never testified as an expert. Woodley admitted that Chapter 11 proceedings are "difficult," that "it's extremely difficult to obtain outside financing," and that there was no binding lease on the business premises involved. The Gerbers simply failed to show any realistic prospect of defeating the defendant's defense of lack of causation.
 
 
 22
 The plaintiffs characterize the granting of summary judgment as an "extreme" or "drastic" remedy. They cite old cases which predate the new era of summary judgment law set out in Celotex Corp. v. Catrett, 477 U.S. 317 (1986), Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), and their progeny. We note also that the Gerbers' personal bankruptcy cases are ongoing and proceeding in bankruptcy court. Therefore, it is obviously uncertain as to the extent of relief that they may obtain in those proceedings from their own financial difficulties. We do not purport here to render judgment on any claim of the Gerbers or their trustee in their individual bankruptcy cases.
 
 
 23
 After a careful examination of the record, we are of the opinion that the plaintiffs have failed to present proof that bankruptcy liquidation of R & B would not have occurred if Gariepy had pursued motions and hearings more diligently and if he had filed a disclosure statement and plan.[3] The plaintiffs have failed in their burden to present credible evidence that Gariepy's malpractice was the proximate cause of a corporate failure to reorganize. See Nelson v. Taoka, 82 Ohio App.3d 101, 611 N.E.2d 462 (Ohio App. 6 Dist. 1992). While we hold for defendant Gariepy, we certainly do not condone his activity as counsel in the various bankruptcy proceedings.
 
 
 24
 Accordingly, we AFFIRM the decision of the district court.
 
 
 25
 BOGGS, Circuit Judge, concurring.
 
 
 26
 I concur completely with the majority opinion. I write separately, however, because of the responsibility under the Code of Judicial Conduct for United States Judges to "take or initiate appropriate disciplinary measures against a judge or lawyer for unprofessional conduct of which [I] may become aware." Canon 3(b)3. "Disciplinary measures may include reporting a lawyer's misconduct to an appropriate disciplinary body." Ibid. commentary; see also Igo v. Coachmen Indus., Inc., 938 F.2d 650, 654-55 (6th Cir.1991). It appears that the behavior of Attorney Gariepy, whom the law has protected from the Gerbers today, merits investigation by his state bar association. The record of this case reveals that Gariepy's behavior as the Gerbers' legal counsel was appalling.
 
 
 27
 Gariepy's misconduct during the course of the Gerbers' bankruptcy proceedings was not the first time that he has abused the bankruptcy process. For example, he was sanctioned under Federal Rule of Civil Procedure 11, Bankruptcy Rule 9011, and Federal Rule of Appellate Procedure 38 in Warsco v. Graves ( In re Graves ), 70 B.R. 535, 536, 541-42 (Bankr.N.D.Ind.1987), for filing a frivolous appeal on behalf of a client who sought to deceive the Bankruptcy Court. Id. at 542.
 
 
 28
 In In re Jones, 117 B.R. 415 (Bankr.N.D.Ind.1990), Gariepy represented a debtor who had filed five separate bankruptcy petitions between March 1987 and March 1990.[1] Each petition was ultimately dismissed. Because "[c]ounsel was fully aware of debtor's desire and purpose for delay and willingly assisted Mr. Jones in achieving it," id. at 422, Gariepy was sanctioned under Rule 11, Fed.R.Civ.P., and under Bankruptcy Rule 9011.
 
 
 29
 In In re Berryhill, 127 B.R. 427 (Bankr.N.D.Ind.1991), the court found Gariepy's client in contempt of the court. The Berryhill court's observations could apply equally to Gariepy's misconduct in this case:
 
 
 30
 It is clear that the debtors are not diligently prosecuting this matter to a conclusion. Instead, they are apparently content to remain under the protections of Chapter 11 and do little more than react to complaints of inaction. Nothing appears to be done unless and until a party in interest complains or the court issues an order requiring compliance; even then compliance is often belated and half hearted. Debtors do not fully and truly comply but, instead, respond with explanations and excuses.
 
 
 31
 [D]ebtors' efforts are inadequate and merely temporary. The disclosure statement as originally proposed was not satisfactory....
 
 
 32
 Id. at 432-33. The court dismissed debtors' petition.
 
 
 33
 In In re Schuldt, 1991 WL 119156 (Bankr.N.D.Ind. May 17, 1991), Gariepy represented another five-time-filing client. The court found that "this case presents an almost classic abuse of the bankruptcy process" marked by "a manipulation of the bankruptcy process by multiple proceedings." Id. at * 3.
 
 
 34
 In reviewing Attorney Gariepy's conduct in this case and his past conduct as reflected in the published and electronically reported case law, it becomes clear that duty requires directing our Clerk to send a copy of this opinion to the proper disciplinary authority of the Indiana State Bar Association.
 
 
 
 [1]
 The plaintiffs' present counsel was evidently unaware that 28 U.S.C. Sec. 1332 was amended in 1988 with an attendant increase in the jurisdictional amount in controversy from $10,000 to $50,000. The defendant failed to note or make any objection on this account. We may sua sponte investigate whether there is appropriate jurisdiction despite the failure of the parties (or the district court) to take note of the jurisdictional amount requirement
 
 
 [2]
 Woodley's last bankruptcy seminar attended had been three years before his deposition
 
 
 [3]
 The evidence contained in the Joint Appendix before us includes an illustrative disclosure statement prepared by Woodley that he claims potentially could have been submitted by Gariepy. Woodley's "illustration" was not submitted to the district court during the proceedings on Gariepy's motion for summary judgment. Rather, it was submitted tardily, as an exhibit to the Gerbers' subsequent unsuccessful motion for rehearing. Therefore, the document was not part of the record before the district court when it granted summary judgment. Even so, this unsworn illustration reflected capital stock in R & B of only $1,000, negative retained earnings of almost $175,000, and a purported balance sheet that lists "building and improvements" of less than $100,000 as of August 1988. The purported "balance sheet" also shows notes payable on real estate and on other assets in the amount of $439,000 (plus substantial accrued interest)
 
 
 [1]
 Gariepy had been attorney of record for each of the first four filings; by the fifth petition, the "Alleged Debtor," see In re Jones, 1990 WL 300921, 300922 (Bankr.N.D.Ind. Sept. 13, 1990), filed pro se