OPINION AND JUDGMENT ENTRY
This case is on appeal from the January 21, 1999 judgment of the Erie County Court of Common Pleas, which granted summary judgment to appellees, John A. Pfefferle, Executor of the Estate of Ruth Ann Lovett, deceased, and the Erie County Humane Society, and dismissed the will contest action filed by appellants, Beverly Waldecker, George Bevier, Harriet Bevier, Frances Bevier, Katherine Boehm, John Bevier, and Raymond Bevier. On appeal, appellants assert the following assignments of error:
 "I. THE TRIAL COURT USED AN IMPROPER STANDARD WHEN IT WEIGHED THE QUALITY OF THE EVIDENCE PRIOR TO GRANTING APPELLEE'S MOTION FOR SUMMARY JUDGMENT.
 "II. THE TRIAL COURT ERRED IN GRANTING APPELLEES' MOTION FOR SUMMARY JUDGMENT IN A WILL CONTEST ACTION WHERE APPELLANTS PRESENTED EVIDENCE THAT THE TESTATRIX LACKED THE TESTAMENTARY CAPACITY TO EXECUTE A VALID WILL.
 "III. THE TRIAL COURT ERRED IN GRANTING APPELLEES' MOTION FOR SUMMARY JUDGMENT IN A WILL CONTEST ACTION IN WHICH THE APPELLANTS PRESENTED EVIDENCE THAT THE PURPORTED LAST WILL AND TESTAMENT WAS ALTERED AND THEREBY INVALID.
 "IV. THE TRIAL COURT ERRED AND ACTED AGAINST A PUBLIC POLICY OF FULL DISCOVERY AND FAIRNESS WHEN IT REFUSED TO RELEASE THE PURPORTED LAST WILL AND TESTAMENT TO APPELLANTS FOR TESTING BY A PROFESSIONAL DOCUMENTS EXAMINER."
In their amended complaint filed on February 2, 1998, appellants contested the validity of Lovett's will. Appellants are Lovett's next of kin. They claimed that Lovett executed the will while under severe pressure or influence of medication and that she lacked testamentary capacity to execute the document. Appellees then moved for summary judgment on the grounds that appellants had no proof that Lovett lack testamentary capacity at the time she executed her will.
The undisputed facts in this case are as follows. Lovett died on December 24, 1996. Submitted to probate on January 13, 1997, was her purported Last Will and Testament executed on December 6, 1989. Appellee, John A. Pfefferle, was appointed as Executor. The sole beneficiary under the Last Will and Testament is appellee, The Erie County Humane Society.
In Item III of Lovett's will she acknowledges that her living relatives include a sister, brother, nieces, and nephews. However, because she believed that they had no need of financial assistance from her, she stated that she was specifically not providing for them in her will. She then disposed of all of her property by giving it to the Erie County Humane Society with a request that they use the funds to care for her cat, Sinbad, for the remainder of his natural life.
Pfefferle, who drafted Lovett's will and had done other legal work for her, testified at his deposition as follows. He did not recall taking any notes when he met with Lovett to discuss her will. Generally, if he had taken such notes, he would have discarded them after the will was executed. His file contained only an unsigned copy of the will and a letter written to her after the will was drafted. Initially, he kept the original will for Lovett. Later, she requested the original and he returned it to her with a cover letter.
Pfefferle testified that he generally had clients initialize each page of their will. Lovett's will had not been initialized on each page. Pfefferle also testified that he sometimes would forget to have the testator initial each page. He usually had the testator read over the will, approve of it, and then sign it in the presence of witnesses. Pfefferle could not recall any specific part of his meeting with Lovett, but could recall that she was an animal lover, her home was filled with animal pictures and statues, and that she wanted to leave her money to the humane society. He also knew that she did not associate with her family. He believed that she took care of her own affairs because she ran an apartment complex by herself. She always appeared neat and well-dressed and did not appear to change in any way over the time that he knew her. He did not ask her if she was using any medication at the time she signed the will. Furthermore, since Lovett knew how much she would inherit from the pending closing of the estate of her companion, Rollie Stamm, Pfefferle presumed that she knew the extent of her estate.
In support of their memorandum in opposition to appellees' motion for summary judgment, appellants presented the following affidavits. Harold F. Rodin, a certified Questioned Document Examiner, attested to the fact that he examined the Lovett will and, with a reasonable degree of scientific certainty, concluded that the will contains irregularities and inconsistencies and that the staple holes of the pages indicate that pages one and two were attached at a different time than three and four.
John J. Bevier, the son of Lovett's oldest brother, attested to the following facts: that Lovett never associated with any of her siblings or nieces and nephews; that Bevier's father had told him as a child that Lovett was strange and should be avoided; that he recently learned that Lovett was occasionally using Librium, a psychotropic medication; that Lovett's sister was hospitalized for psychiatric care and died while in a psychiatric ward; that Pfefferle initially told Bevier that Pfefferle did not retain a copy of the will; and that Bevier personally examined the will admitted to probate and found that the first two pages have staple holes that do not match the last two pages and that the final paragraph of the will indicates that each page of the will was initialed by the testator, but none of the pages were initialed by Lovett.
Frances L. Bevier, Lovett's niece, attested to the fact that she examined the documents on file in this case, and concluded that the Niemes' test had not been completed prior to the execution of Lovett's will. From this conclusion, she also concludes that Lovett lacked testamentary capacity.
Phyllis Kuenhl-Walters, a psychologist, attested to the fact that assuming Lovett's relationship with her siblings or nieces and nephews was essentially nonexistent (to the point that the nieces and nephews and Lovett could not have recognized each other from photographs), then Kuenhl-Walters could conclude, to a reasonable degree of psychological certainty, that Lovett could not have been able to hold in her mind the names and identities of her heirs. Furthermore, assuming that Lovett did not meet any of her nieces and nephews and never attended family functions, Kuenhl-Walters could conclude to a reasonable degree of psychological certainty, that Lovett could not have appreciated the nature and extent of her relationships with her family members.
In their first, second, and third assignments of error, appellants argue that the trial court erred when it granted summary judgment in favor of appellees. Appellants contend that the court applied the wrong standard by erroneously weighing the evidence and by failing to view the evidence of appellants, as the non-moving party, in a light most favorable to them.
We find that the trial court misstated the position of appellants on summary judgment. Appellants basically argue that Lovett did not associate with any family members and, therefore, did not appreciate the significance of family relationships and could not have known who were her natural heirs. Furthermore, they contend that her testamentary capacity was also affected by medication that she was taking at the time of the execution of her will. Finally, appellants argue that the will admitted to probate was not the actual will signed by Lovett or that she revoked the will by altering it.
Appellants also identified the following in its opposition to summary judgment as the genuine issues of material fact: whether Lovett was under undue influence of medications or otherwise lacked testamentary intent at the time of the execution of her will; whether the will admitted to probate was altered or tampered with rendering it invalid; and whether discovery is sufficiently complete to permit summary judgment.
We now turn to the determination of whether summary judgment was appropriate in this case. Summary judgment is an appropriate method of resolving litigation prior to trial when there are no factual issues to try. Norris v. Ohio Std. Oil Co.
(1982), 70 Ohio St.2d 1, 2. Therefore, the basic function of the trial court in a summary judgment proceeding is not to determine the issues of fact, but to determine whether or not triable issues of fact exist. Fuller v. German Motor Sales, Inc. (1988),51 Ohio App.3d 101, 103, and Viock v.Stowe-Woodward Co. (1983), 13 Ohio App.3d 7, 15.
The moving party bears the burden of persuading the court that no genuine issue exists as to any material fact and that he is entitled to summary judgment. Zivich v. Mentor SoccerClub, Inc. (1998), 82 Ohio St.3d 367, 370. The nonmoving party may not rest on his pleadings to oppose summary judgment. The nonmoving party must produce evidence showing that there is a genuine issue for trial. State ex rel. Burnes v. Athens CountyClerk of Courts (1998), 83 Ohio St.3d 523, 524. See, also,Youngerman v. Meijer, Inc. (Sept. 20, 1996), Montgomery App. No. 15732, 1996 Ohio App. LEXIS 4046, unreported (the nonmoving party must have had an adequate opportunity for discovery). Summary judgment is appropriate if, pursuant to Civ.R. 56(C), these requirements have been met:
 "* * * there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor. * * *"
Generally, issues of witness credibility are outside the scope of the summary judgment proceeding. Perez v.Scripps-Howard Broadcasting Co. (1988), 35 Ohio St.3d 215, 218-219;Nelson v. Taoka (1992), 82 Ohio App.3d 101, 108, citingSibberson v. Mercy Hosp. (Mar. 31, 1989), Lucas App. No. 88-236, unreported, and Duke v. Sanymetal Products Co., Inc. (1972),31 Ohio App.2d 78, 83. If an issue raised in the motion for summary judgment must be resolved by determining the credibility of the witness or witnesses in question, the resolution of the issue should be done by the trier of fact who has the opportunity to observe the demeanor of each witness. Killilea v. Sears, Roebuck Co.
(1985), 27 Ohio App.3d 163, 167, citing to Duke, supra. Thus, where the evidence submitted in support of and in opposition to the motion for summary judgment involves conflicting testimony, by way of affidavit or otherwise, relating to a dispositive fact, summary judgment should not be employed to resolve those conflicts. Id.
Furthermore, the trial court should not consider evidence which fails to meet the requirements of Civ.R. 56(E) even if the opposing party fails to object to the admissibility of the evidence. Watts v. Watts (Mar. 18, 1994), Lucas App. No. 93-200, unreported.
Generally, the appellate court reviews the grant or denial of a summary judgment motion de novo by applying the same standard as the trial court. Smiddy v. The Wedding Party,Inc. (1987), 30 Ohio St.3d 35, 36, and Brown v. Scioto Bd. ofCommrs. (1993), 87 Ohio App.3d 704, 711. If the appellate court finds any valid grounds to support the trial court's decision, the appellate court must affirm the trial court's judgment. Joyce v.Gen. Motors Corp. (1990), 49 Ohio St.3d 93, 96. However, an appellate court cannot review the trial court's judgment if the trial court did not strictly comply with the requirements of Civ.R. 56(C) and properly consider all of the appropriate evidence filed pursuant to the rule. Murphy v. City of Reynoldsburg
(1992), 65 Ohio St.3d 356 at the syllabus. The trial court's failure to fulfill its mandatory duty under the rule to consider the admissible evidence presented constitutes reversible error.Id. The appellate court cannot overlook the trial court's error and independently review the evidence. Id. at 360. While theMurphy case involved a trial court which failed to read the evidence presented, the same analysis has been applied to a case where the trial court improperly refused to consider an affidavit because it conflicted with the affiant's prior depositional testimony. Wissel v. McDonalds Corp. (Jan. 21, 1998), Medina App. No. 2702-M, 1998 Ohio App. LEXIS 139, unreported. See, also,Williams v. Conn (January 12, 1998), Scioto App. No. 97CA2478, 1998 Ohio App. LEXIS 151, unreported (the trial court should have considered affidavits submitted on summary judgment because they were relevant to the issues raised in the complaint).
In its judgment entry granting summary judgment to appellees, the trial court in this case stated as follows: "Upon due consideration and after weighing the evidence, the Court finds that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment was made." The trial court also made the following findings during the hearing on the motion and incorporated her remarks into her final judgment entry. She found that John Bevier's affidavit and Dr. Kohl-Walters' affidavit implied that Lovett could not form a close relationship with another person. However, the court found that this conclusion was contrary to: 1) Pfefferle's testimony that Lovett had a close relationship with Stamm, who predeceased Lovett shortly before she executed the will at issue; and 2) appellants' argument that Lovett was taking medication because she was depressed by the death of Stamm. Furthermore, the court found that while Bevier states that Lovett was taking Librium, there was no medical evidence to support this fact or the fact that use of this drug would impair someone's testamentary capacity. The trial court also found that while Bevier's affidavit was not based upon any relationship with Lovett, Pfefferle had actually known and worked with Lovett for some time before she executed her will. The court noted that Pfefferle testified that Lovett knew how much she was inheriting from Stamm and, therefore, knew the extent of her estate. The court also found that Pfefferle's testimony that Lovett made reference to her siblings and nieces and nephews and the fact that she explicitly indicated in her will that she was excluding them was sufficient evidence to show that she knew who her heirs were even though she could not have named them. The court also noted that it was significant that Lovett's only living sister did not join in the will contest since she would have actually had some dealings with Lovett and could have testified on behalf of appellants.
Finally, as to the grammatical error on page one of the will, the lack of initials on each page, and the additional staple holes on pages three and four of the will, the court concluded that these "irregularities" were explained by Pfefferle's testimony that the grammatical error and lack of initials were simply errors and that the additional staple holes, from a common sense view, were caused by some reasonable explanation, not by tampering or revocation of the will.
We find that the case before us is analogous to Murphyv. City of Reynoldsburg, supra, in that the trial court clearly ignored the mandates of Civ.R. 56(C) by failing to determine whether there was a genuine issue of material fact. Instead, the court weighed the evidence presented and determined the credibility of the witnesses to determine the issues presented in the case. We cannot review the trial court's decision when it clearly did not make a summary judgment determination.
Accordingly, we find appellants' first, second, and third assignments of error well-taken.
Appellants argue in their fourth assignment of error that the court erred when it refused to release the purported Last Will and Testament to appellants for expert testing due to its irregular appearance. They argue that public policy requires that the court permit appellants' experts an opportunity to fully examine the document.
Appellees opposed the motion for scientific examination of the will on the ground that such examination would destroy a portion of the will and that there was no necessity for such examination. Appellants argued that only a few typewritten words needed to be destroyed in order to examine the document. They justified the need for such examination on the facts that the will was not initialed on each page, the will does not contain page numbers, the margins of each page of the will do not match, the typewriter ink of the will appears to vary in tone from page to page, and at least one of Lovett's statements in the will is allegedly false.
In a judgment entered on March 16, 1998, the trial court concluded that there is no Ohio authority to support appellants' motion to examine the will. The trial court distinguished this case from that of In re Estate of Haynes (1986), 25 Ohio St.3d 101
stating that the Haynes case involved a criminal investigation for forgery of a will and there was no evidence that the will was removed from the court in order to be examined. We disagree with the latter finding. The Haynes court clearly states that the will was submitted to the Bureau of Criminal Investigations for examination of the signature of the will. However, while the will did leave the probate court for testing, it was not destroyed during a scientific examination.
Furthermore, the court below held that this case is also distinguishable from the Haynes case on the ground that the attorney who drafted the will in this case was available to testify and explained that the lack of page numbers or page initialization was an oversight.
The court also concluded that its physical examination of the will and the executor's testimony create a presumption of validity. Therefore, the court denied the motion and would only permit a documents examiner to examine the will on court premises.
A trial court's rulings regarding the discovery process are matters within the court's discretionary powers. State exrel. Daggett v. Gessaman (1973), 34 Ohio St.2d 55, paragraph one of the syllabus. Therefore, the court's decisions will not be overturned on appeal unless a party demonstrates that the trial court abused its discretion. Mauzy v. Kelly Services, Inc.
(1996), 75 Ohio St.3d 578, 592. An abuse of discretion involves more than an error of law or judgment; the trial court's attitude must be unreasonable, arbitrary, or unconscionable. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219.
In the case before us, appellants have not demonstrated that the trial court abused its discretion. While they assert that there is a public policy basis justifying their discovery request, they merely argue that once the will has been admitted to probate, there is no need for the original will and no harm done if a portion of the original will is destroyed. We disagree. Once the authenticity of the will has been challenged in a will contest action, the document itself is a significant piece of evidence in the case. In light of the other facts involved in this case, we do not find that the trial court's denial of appellants' motion to permit scientific examination and destruction of the will was an abuse of its discretion.
Appellants' fourth assignment of error is not well-taken.
Having found that the trial court did commit error prejudicial to appellants, the judgment of the Erie County Court of Common Pleas is reversed, in part, and affirmed, in part. The judgment is reversed only as to the granting of summary judgment. This case is remanded to the trial court for further proceedings consistent with this decision. Pursuant to App.R. 24, appellants and appellees are hereby ordered to equally pay the court costs incurred on appeal.
JUDGMENT REVERSED, IN PART, AND AFFIRMED, IN PART.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Peter M. Handwork, P.J.
 James R. Sherck, J.
 Richard W. Knepper, J.
CONCUR.